## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| EAM 40 MEADOW LANE LLC, | : | Case No. 22-10293 (BLS) |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| GEORGE L. MILLER, in his capacity as | : | |
| Chapter 7 Trustee for the bankruptcy | : | |
| estate of EAM 40 MEADOW LANE LLC, | : | Adv. Pro. No. 24-50026 (BLS) |
| | : | |
| Plaintiff, | : | |
| | : | **Re: Adv. Pro. D.I. 1** |
| v. | : | |
| | : | |
| DHRUV PIPLANI, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION BY DHRUV PIPLANI TO DISMISS THE COMPLAINT</u>

**THE ROSNER LAW GROUP LLC**

Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

*Counsel to the Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

SUMMARY OF ARGUMENT ........................................................................................1

SUMMARY OF ALLEGATIONS IN THE COMPLAINT.............................................2

ARGUMENT ...................................................................................................................7

    I.      The Standards Applicable to This Motion. ..............................................................7

    II.    The Subsequent Transfers, or the Right to Seek Avoidance of the Subsequent Transfers, are Property of the Estate in the Florida Case. ......................................9

    III.   The Compl. Must be Dismissed Because the Initial Transfer to Meir Was Not Avoided First. .....................................................................................................11

        A.    The Plain Text of § 550(a) Requires the Delaware Trustee to Avoid the Initial Transfer to Meir Before he May Recover from Defendant as the Subsequent Transferee. ...............................................................................11

        B.    The Rules of Statutory Construction Require the Court to Give Effect to the Plain Meaning of § 550(a). .................................................................11

        C.    Case Law Enforcing the Plain Meaning of § 550(a).................................14

        D.    Giving Effect to the Plain Meaning of § 550(a) is Consistent with § 550(f). ....................................................................................................20

        E.    Excusing Avoidance of the Initial Transfer Unfairly Tilts Litigation against Defendant in Favor of the Delaware Trustee................................21

    IV.   Count I Does Not Meet the *Twombly/Iqbal* Pleading Standard Because the Complaint Fails to Sufficiently Demonstrate That the Challenged Transfers Are an Interest of the Debtor in Property or Proceeds Thereof. ...................................22

        A.    There Are Cases Requiring That The Delaware Trustee Only Show the Initial Transfers Are Avoidable Before Seeking Recovery From The Subsequent Transferee. ...............................................................................23

    V.    Count II, For Disallowance of Claims, Should Be Dismissed If Count I Is Dismissed. ............................................................................................................28

RESERVATION OF RIGHTS .......................................................................................29

CONCLUSION..............................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Advanced Telcomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*,
  321 B.R. 308 (Bankr. M.D. Fla. 2005) .................................................................. 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 7, 8

*ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*,
  582 F. 3d 422 (2d Cir. 2009) ................................................................................. 25

*Bash v. Textron Fin. Corp.*,
  524 B.R. 745 (Bankr. N.D. Ohio 2015) ................................................................. 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 7, 8

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ................................................................................. 21

*Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*,
  195 B.R. 971 (Bankr. D. Mass. 1996) .................................................................... 19

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) .................................................................................... 1

*Burtch v. Huston (In re USDigital, Inc.)*,
  443 B.R. 22 (Bankr. D. Del. 2011) ......................................................................... 7, 8

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249, 112 S. Ct. 1146 (1992) ..................................................................... 12, 17

*Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*,
  220 B.R. 331 (Bankr. W.D. Tex 1998) .................................................................... 27

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
  343 B.R. 75 (Bankr. S.D.N.Y. 2006) ........................................................... 14, 16, 20, 21

*Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron)*,
  388 B.R. 489 (S.D.N.Y. 2008) ................................................................................ 14, 16

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ................................................................................... 7, 8

4927-0141-3708, v. 4

*Friedman's Liquidating Tr. v. Roth Staffing Cos. LP (In re Friedman's Inc.)*,
  738 F.3d 547 (3d Cir. 2013) ................................................................................. 12

*Geltzer v. Fur Warehouse, Ltd. (In re Furs by Albert & Marc Kaufman, Inc.)*,
  2006 Bankr. LEXIS 3614 (Bankr. S.D.N.Y. Dec. 14, 2006) ................................... 19

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*
  230 B.R. 101 (Bankr. N.D. Ohio 1998) ............................................... 16, 17, 18, 19

*Hufft v. Cruz Contracting Corp.*,
  643 F. Supp. 2d 344 (S.D.N.Y. 2009) ................................................................... 14

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.)*,
  408 F.3d 689 (11th Cir. 2005) ....................................................................... passim

*In re Cold 2005, Inc.*,
  2011 Bankr. LEXIS 5770 (October 31, 2011 Bankr. N.D. Ill.) ................................ 9

*In re Lahijani*,
  325 B.R. 282 (9th Cir. BAP 2005) ......................................................................... 9

*In re MortgageAmerica Corp.*,
  714 F.2d 1266 (5th Cir. 1983) .............................................................................. 9

*In re New Century TRS Holdings, Inc.*,
  423 B.R. 467 (Bankr. D. Del. 2010) ...................................................................... 8

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) ................................................................................. 13

*In re Price*,
  370 F.3d 362 (3d Cir. 2004) ............................................................................... 12

*In re Zwirn*,
  362 B.R. 536 (Bankr. S.D. Fla. 2007) ................................................................. 10

*Indus. & Mun. Eng'g. Inc. v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*,
  178 B.R. 753 (Bankr. C.D. Ill. 1995) ................................................................... 19

*Kaufman v. Allstate N.J. Ins. Co.*,
  561 F.3d 144 (3d Cir. 2009) ............................................................................... 12

*Kendall v. Sorani (In re Richmond Produce Co.)*,
  195 B.R. 455 (N.D. Cal. 1996) ...................................................................... 26, 27

*Langenkamp v. Culp*,
  498 U.S. 42, 45, 111 S. Ct. (1990) ...................................................................... 10

iv

*Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*,
    332 B.R. 896 (Bankr. D. Nev. 2005) ....................................................... 27

*Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.)*,
    874 F.2d 1186 (7th Cir. 1989) ......................................................... 26, 27

Matter of S. Coast Supply Co.,
    91 F.4th 376 (5th Cir. 2024) .............................................................. 9

*Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*,
    641 B.R. 467 (Bankr. D. Del. 2022) ..................................................... 13

*Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*,
    92 F.3d 139 (3d Cir. 1996) ............................................................... 28

*Miller v. Greenwich Cap. Fin. Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.)*,
    361 B.R. 747 (Bankr. D. Del. 2007) ..................................................... 8

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ............................................................. 8

*NLRB v. Martin Arsham Sewing Co.*,
    873 F.2d 884 (6th Cir. 1989) ............................................................ 9

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.)*,
    371 B.R. 589 (Bankr. D. N.H. 2007) .................................................... 28

*Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, Nat'l Ass'n (In re M. Fabrikant & Sons, Inc.)*,
    394 B.R. 721 (Bankr. S.D.N.Y. 2008) ............................................. 11, 24

*Parker v. NutriSystem, Inc.*,
    620 F.3d 274 (3d Cir. 2010) ............................................................ 12

*Perez v. Westchester Cnty. Dep 't of Corr.*,
    587 F.3d 143 (2d Cir. 2009) ............................................................ 20

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................. 7

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ............................................................ 16

*Pitman Farms v. ARKK Food Co., LLC (In re Simply Essentials, LLC)*,
    78 F.4th 1006 (8th Cir. 2023) ........................................................... 9

*Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co., LLC)*,
964 F.3d 958 (10 Cir. 2020) ........................................................................................ 22

*Remmert v. Briar Cap. Working Fund Cap., L.L.C.*,
2024 U.S. LEXIS 2497 (U.S. June 10, 2024) ................................................................ 9

*Rogers v. Laurain (In re Laurain)*,
113 F.3d 595 (6th Cir. 1997) ....................................................................................... 17

*Rowland v. Bissell Homecare, Inc.*,
73 F.4th 177 (3d Cir. 2023) ......................................................................................... 20

*Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*,
127 B.R. 471 (Bankr. E.D. Okla. 1991) .................................................................. 19, 20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ............................................................................. 18

*Sklar v. Susquenanna Bank (In re Global Prot. USA, Inc.)*,
546 B.R. 586 (Bankr. D.N.J. 2016) .............................................................................. 27

*Smith v Weinshanker (In re Draw Another Circle)*,
602 B.R. 878 (Bankr. D. Del. June 13, 2019) .............................................................. 28

*Sticka v. Bestline, Inc. (In re Attaway)*,
180 B.R. 274 (Bankr. D. Or. 1995) .............................................................................. 25

*Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.)*,
168 B.R. 408 (Bankr. D. Ariz. 1994) ........................................................................... 19

*Tibble v. Farmers Grain Express, Inc. (In re Mich. Biodiesel, LLC)*,
510 B.R. 792 (Bankr. W.D. Mich. 2014) ...................................................................... 21

*United States v. Jackson*,
964 F.3d 197 (3d Cir. 2020) ......................................................................................... 20

*United States v. Ron Pair Enters.*,
489 U.S. 235, 109 S. Ct. 1026 (1989) ..................................................................... 12, 13

*Weinman v. Simons (In re Slack-Horner Foundries Co.)*,
971 F.2d 577 (10th Cir. 1992) ...................................................................................... 18

*Williams v. Mortillaro (In re Res., Recycling & Remediation, Inc.)*,
314 B.R. 62 (Bankr. W.D. Pa. 2004) ............................................................................ 19

*Williams v. Potter*,
384 F. Supp. 2d 730 (D. Del. 2005) ............................................................................... 8

vi

*Yoppolo v. Liberty Mortg. (In re Morgan)*,
   276 B.R. 785 (Bankr. N.D. Ohio 1998) ................................................................... 19


## Constitutional Provisions

U.S. Const. art. III ................................................................................................................ 29


## Statutes

*11 U.S.C. § 362(a)(1)* ........................................................................................................ 10

11 U.S.C. § 362(a)(3) ........................................................................................................ 10

11 U.S.C. § 502(d) ............................................................................................ 7, 18, 23, 28

11 U.S.C. § 541(a)(1) ........................................................................................................ 10

11 U.S.C. § 541(a)(3) ........................................................................................................ 10

11 U.S.C. § 544 .................................................................................................... 2, 15, 23

11 U.S.C. § 545 .................................................................................................... 2, 15, 23

11 U.S.C. § 546 ........................................................................................................ 17, 18

11 U.S.C. § 546(a) ...................................................................................................... passim

11 U.S.C. § 547 ................................................................................................ 2, 15, 23, 26

11 U.S.C. § 548 .......................................................................................................... passim

11 U.S.C. § 548(a) ............................................................................................ 17, 23, 26, 27

11 U.S.C. § 548(a)(1)(A) .............................................................................................. 4, 13

11 U.S.C. § 548(a)(1)(B) .................................................................................................... 4

11 U.S.C. § 549 .................................................................................................... 2, 15, 23

11 U.S.C. § 550 .......................................................................................................... passim

11 U.S.C. § 550(a) ...................................................................................................... passim

11 U.S.C. § 550(a)(1) ................................................................................................ 2, 4

11 U.S.C. § 550(a)(2) .............................................................................................. 6, 13

11 U.S.C. § 550(c) ...................................................................................................... 26

11 U.S.C. § 550(f) ................................................................................................ passim

11 U.S.C. § 550(f)(1) .................................................................................................. 15

11 U.S.C. § 550(f)(2) .................................................................................................. 15

11 U.S.C. § 553(b) ........................................................................................... 2, 15, 23

11 U.S.C. § 724(a) ........................................................................................... 2, 15, 23

**Rules**

Del. Bankr. L.R. 7012-1 ............................................................................................. 29

Fed. R. Bankr. P. 2004 ............................................................................................... 25

Fed. R. Bankr. P. 4003(b) .......................................................................................... 17

Fed. R. Bankr. P. 7008 ................................................................................................. 1

Fed. R. Bankr. P. 7012 ............................................................................................... 29

Fed. R. Bankr. P. 7012(b) ............................................................................................. 7

Fed. R. Bankr. P. 7012(b)(6) ........................................................................................ 1

Fed. R. Civ. P. 12 ....................................................................................................... 29

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 7, 8

Fed. R. Civ. P. 8 ..................................................................................................... 7, 21

Fed. R. Civ. P. 8(a) ....................................................................................................... 1

**Other Authorities**

5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ..................................... 1

Black's Law Dictionary 146 (8th ed. 2004)..................................................................................... 11

Webster's Third New International Dictionary (Unabridged) 151 (1981) ................................... 11

## NATURE AND STAGE OF THE PROCEEDING

George L. Miller, in his capacity as chapter 7 Trustee ("Delaware Trustee" or "Plaintiff"), for the bankruptcy estate of EAM 40 Meadow Lane LLC ("EAM" or "Debtor"), commenced this adversary proceeding against Dhruv Piplani (the "Defendant"). Defendant respectfully submits this Memorandum of Law in support of his Motion, pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), as incorporated by Federal Rules of Bankruptcy Procedure 7008 and 7012(b)(6), to Dismiss the Complaint (the "Complaint" or "Compl.")[1], a true and correct copy of which is attached as **Exhibit A.**

## SUMMARY OF ARGUMENT

By his Compl., the Delaware Trustee seeks to recover certain Subsequent Transfers allegedly received by Defendant. But before the Delaware Trustee filed the Compl., Nir Meir ("Meir"), the initial transferee of the *same* transfers, filed for chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Southern Florida ("Florida Case").[2] According to the Compl., the transfers from EAM went first to Meir (as such, the "Initial Transfers"), and subsequently to Defendant. Therefore, the same transfers of funds may be avoided and recovered by both bankruptcy estates. Because Meir filed for chapter 7 bankruptcy in the Florida Case *before* the Delaware Trustee's Compl. was filed, the Compl. is in violation of the automatic stay imposed by the Florida Case and is therefore void.

Further, the Delaware Trustee filed a proof of claim in the Florida Case asserting the same

---

[1] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Compl.

[2] *See In re Nir Meir*, chapter 7 case no. 24-11047-LMI. It is respectfully requested that this Court take judicial notice of the docket in the Florida Case. References to the Florida docket or claims register will be ["Fla. D.I. [  ]"]. In the context of a motion to dismiss, courts may consider "items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

claims as set forth in the Compl. (the "<u>EAM POC</u>").   The foregoing has significant legal consequences and limitations for the Delaware Trustee.   The EAM POC submits the Delaware Trustee to the equitable jurisdiction of the Florida Case for the adjudication of those claims.   The Delaware Trustee, a creditor of the Florida Case, cannot pursue recovery of the same claims outside the Florida Case.   The Delaware Trustee is also not entitled to two recoveries, and Defendant should not have two exposures for the same liability.

Count I fails because the clear and unambiguous *pre-condition* for seeking relief under §550(a)(1) is not satisfied.   Section 550(a)(1)  is only operative "to the extent that a transfer *is avoided* under section §§544, 545, 547, 548, 549, 553(b) or 724(a) …." (*emphasi*s added).   To the extent the Court reads "avoided" in the statute as creating a lower burden, *i.e.*, a trustee must only show the challenged transfer is "avoidable[,]", the Complaint still fails to meet that lower burden under §548.   Among other things, the Complaint fails to allege plausible facts that EAM was insolvent or rendered insolvent at the time each of the Initial or Subsequent Transfers was made.

The Complaint seeks pre-judgment interest. *See* WHEREFORE clause at A.   Plaintiff is not entitled to pre-judgement interest as a matter of law.

The Complaint seeks to require "the Defendant to pay to the estate the costs and expenses of this suit to the extent permitted by applicable law.   The Compl. fails to assert any basis to reverse the American Rule.

<u>**SUMMARY OF ALLEGATIONS IN THE COMPLAINT**</u>

1.      On April 6, 2022 (the "<u>Petition Date</u>"), EAM filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  Compl. at ¶ 7.

2.      There is a dispute over ownership of EAM and 40 Meadow Lane.  Compl. at ¶ 20.

3.      On April 5, 2021, EAM sold 40 Meadow Lane for $44,908,656, over four (4) times

its purchase price.  Compl. at ¶¶ 12, 23.  The Compl. recites that, "despite the Debtor holding title in fee simple to 40 Meadow Lane, the Debtor received none of the consideration for the sale of the property."  Compl. at ¶ 23.

4.      Creditor YH Lex Estates LLC filed suits against non-debtors HFZ Capital Group LLC, Ziel Feldman and Nir Meir.  Compl. at ¶ 18.

5.      Ziel Feldman discovered that Nir Meir allegedly had been misappropriating non-debtor HFZ Capital's funds and forging certain business records. Compl. at ¶ 19.

6.      EAM filed a suit against Nir Meir.  Compl. at ¶ 20.

7.      The Compl. recites that EAM transferred $1,628,158.58 to Meir's Chase bank account ending in -2895. Compl. at ¶¶ 25, 29.  The Compl. fails to state the date of the transfer or the balance of that account immediately prior to receipt of such transfer. The Compl. states that Nir Meir transferred $250,000 from the same account (the "Subsequent Transfer") to the Defendant on 4/6/21 and 5/5/21. Compl. at **Exhibit A.**  The Compl. fails to state the balance remaining in that account following the Subsequent Transfers.

8.      On February 1, 2024, Nir Meir initiated the Florida Case.

9.      On February 1, 2024, Drew M. Dillworth was appointed to serve as the chapter 7 trustee for the Florida Case (as such, the "Florida Trustee").[3]

10.      On April 5, 2024, the Delaware Trustee filed the EAM POC.[4]  The EAM POC asserts a general unsecured claim in the Florida Case in the amount of $ 22,605,546.10.[5]  The basis for the claim is described as follows:

---

[3] Fla. D.I. at 2.

[4] Fla. Claim Register Claim No: 2.

[5] *Id*.

4927-0141-3708, v. 4

"The Delaware Trustee asserts this Claim in connection with his efforts to recover proceeds from the sale of 40 Meadow Lane, Southampton, New York ("40 Meadow Lane"), which were siphoned off from EAM's bankruptcy estate at the direction of Nir Meir. On April 5, 2021, Nir Meir caused EAM to sell 40 Meadow Lane together with certain furnishings to a third-party for a total of $44,908,656 (the "Sale Proceeds"). Despite EAM holding title in fee simple to 40 Meadow Lane, EAM received none of the consideration for the sale of the property.

The Delaware Trustee asserts this Claim to avoid the Transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B). Nir Meir authorized and facilitated the Transfers in his capacity as the manager of EZL, the managing member of EAM, with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the date the disbursements were made. Moreover, the Transfers were made in exchange for less than reasonably equivalent value at a time when EAM was insolvent or became insolvent as a result of the disbursements. Because the Transfers were avoidable pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B), the Delaware Trustee is entitled to recover from Nir Meir the avoided Transfers or the value thereof, for the benefit of EAM's bankruptcy estate pursuant to 11 U.S.C. § 550(a)(1).

The Delaware Trustee, in his capacity as chapter 7 trustee for the bankruptcy estates of EAM and EZL, also asserts claims for damages against Nir Meir based on Nir Meir's breaches of the fiduciary duties owed by him to EAM and EZL. In addition, the Delaware Trustee asserts claims against Nir Meir for fraud and conversion on the grounds that he caused the Sale Proceeds, which were property of EAM, to be used to pay his personal obligations."

A copy of the EAM POC is attached hereto as **Exhibit B.**

11.     In the Florida case, the following notice was given: *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Notice of Appointment of Interim Trustee Dillworth, Drew M. Meeting of Creditors to be held by Video Conference on 3/6/2024 at 09:30 AM. Deadline to Object to Discharge/Dischargeability is 5/6/2024.*[6]

---

[6] Fla. D.I. 2.

4927-0141-3708, v. 4

12.     The docket in the Florida Case indicates the last day to object to dischargeability of debt was May 6, 2024.[7]

13.     On April 8, 2024, the Florida Trustee filed the *Trustee's First Motion to Extend Time to Object to the Debtor's Claimed Exemptions, in addition to Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s)* [Fla. D.I. 31].

14.     On April 12, 2024, creditor Ranee Bartolacci filed the *Motion to Extend Time to File Section 523 Complaint Objecting to Dischargeability of a Debt, in addition to Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s)* [Fla. D.I. 36].

15.     On April 19, 2024, creditor YH Lex Estates, LLC filed the *Motion to Extend Time to Object to Debtor's Claim of Exemptions, in addition to Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s), in addition to Motion to Extend Time to File Section 523 Complaint Objecting to Dischargeability of a Debt* [Fla. D.I. 41].

16.     On May 3, 2024, creditor Avishai Abrahami filed the *Unopposed Ex Parte Motion to Extend Time to Object to Debtors Claimed Exemptions and Object to Debtors Discharge and/or Dischargeability of Certain Debts* [Fla. D.I. 55].

17.     On May 1, 2024, the Court entered the *Agreed Order Granting First Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #31) BOTH Deadlines Extended to 10/25/2024, Granting Motion to Extend Time To Claimed Exemptions* [Fla. D.I. 50], which granted the Florida Trustee an extension of time to timely object to the Debtor's discharge and/or object to the Debtor's claimed exemptions through and including October 25th, 2024.

18.     On May 3, 2024, the Court entered the *Order Granting Motion to Extend Time to*

---

[7] Fla. D.I. at 2.

*File Section 523 Complaint Objecting to Dischargeability of Debtor (Re: # 36), Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #36) BOTH Deadlines Extended to 10/25/2024* [Fla. D.I. 57], for the benefit of Creditor Ranee Bartolacci.

19.     On May 3, 2024, the Court entered the *Agreed Order Granting Motion to Extend Time To Claimed Exemptions (Re: # 41), Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #41) Requested Deadlines Extended to 10/25/2024, Granting Motion to Extend Time to File Section 523 Complaint Objecting to Dischargeability of Debtor* [D.I. 58] for the benefit of creditor YH Lex Estates, LLC.

20.     On May 7, 2024, the Court entered the *Agreed Order Granting Motion to Extend Time To Claimed Exemptions and Object to Debtors Discharge and/or Dischargeability of Certain Debts, **Requested Deadlines Extended Until 10/25/2024** (Re: # 55)* [Fla. D.I. 64], for the benefit of creditor Avishai Abrahami.

21.     There does not appear on the docket in the Florida Case any entry that the Delaware Trustee sought or obtained an extension of the Delaware Trustee's time to object to the dischargeability of the debt owed to the EAM estate beyond October 25, 2024.  *See* a true and correct copy of the Docket from the Florida Case at **Exhibit C**.

22.     On April 5, 2024, the same date he filed the EAM POC, the Trustee filed this Complaint against Defendant.

23.     The Compl. alleges that Defendant received the Subsequent Transfers from the EAM estate,  Compl. at ¶¶ 36, 37.

24.     The Complaint asserts two (2) Counts for relief, as follows:

      a.     First Claim for Relief:  Recovery of Subsequent Transfers - 11 U.S.C. §§ 550(a)(2); and

b.      Second Claim for Relief:  Disallowance of Claim - 11 U.S.C. § 502(d).

## ARGUMENT

**I.      The Standards Applicable to This Motion.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Federal

Rule of Bankruptcy Procedure 7012(b), governs a motion to dismiss for failure to state a claim

upon which relief can be granted.  The United States Supreme Court, in *Bell Atl. Corp. v. Twombly*

("*Twombly*"), 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662 (2009),

enunciated new and heightened pleading requirements for Rule 8 (the "*Twombly/Iqbal* Pleading

Standard").   Since *Twombly* and *Iqbal*, "pleading standards have shifted from simple notice

pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the

possibility of relief to survive a motion to dismiss."  *Burtch v. Huston (In re USDigital, Inc.)*, 443

B.R. 22, 34 (Bankr. D. Del. 2011) ("*USDigital*") (quoting *Fowler v. UPMC Shadyside* ("*Fowler*"),

578 F.3d 203, 209 (3d Cir. 2009)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do.  Factual allegations must be enough to raise a right to relief above the speculative level

on the assumption that all of the complaint's allegations are true."  *Twombly*, 550 U.S. at 555

(internal citations omitted).  A plaintiff is required to make a "showing rather than a blanket

assertion of an entitlement to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008) (internal citations omitted).  "[W]ithout some factual allegation in the complaint, a claimant

cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds'

on which the claim rests."  *Id.* at 233 (citing *Twombly*, 550 U.S. at 555 n.3).  Thus, stating a claim

requires a complaint to "mak[e] a sufficient showing of enough factual matter (taken as true) to

7

suggest the required elements …." *Id.* at 235.

A complaint "must provide the defendant with fair notice of the claim filed against it." *Miller v. Greenwich Cap. Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc.*), 361 B.R. 747, 753 (Bankr. D. Del. 2007) (internal citations omitted). "Vague and conclusory factual allegations do not provide fair notice to a defendant." *Williams v. Potter*, 384 F. Supp. 2d 730, 733 (D. Del. 2005). "To provide fair notice, the complaint must go beyond merely quoting the relevant statute." *US Digital*, 443 B.R at 33. "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (internal citations omitted).

### *The Two-Part Analysis Under Fowler*

In *Fowler*, the Third Circuit confirmed the impact the *Twombly/Iqbal* Pleading Standard had on Rule 12(b)(6) motions and instructed trial courts to engage in a two-part analysis, as follows:

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.** [hereinafter, "*Fowler* Hurdle 1"]. **Second, a District court must then determine whether the facts alleged in the compliant are sufficient to show that the plaintiff has a "plausible claim for relief …" A complaint has to "show" such an entitlement with its facts.** [hereinafter, "*Fowler* Hurdle 2"]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.'" This "plausibility" determination will be "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler*, 578 F.3d at 210-11 (internal citations omitted) (**emphasis** added); *see also In re New Century TRS Holdings, Inc.,* 423 B.R. 467 (Bankr. D. Del. 2010).

II.    **The Subsequent Transfers, or the Right to Seek Avoidance of the Subsequent Transfers, are Property of the Estate in the Florida Case.**

There is ample case law that holds that an avoidance action, or the estate's right to assert an avoidance action, is property of the estate that may be sold, encumbered or **exclusively** prosecuted by a trustee.  *See, e.g.*, *Matter of S. Coast Supply Co*., 91 F.4th 376 (5th Cir. 2024), *cert denied Remmert v. Briar Cap. Working Fund Cap., L.L.C.*, 2024 U.S. LEXIS 2497 (U.S. June 10, 2024)(holding that preference claims may be sold as property of the estate); *Pitman Farms v. ARKK Food Co., LLC* (*In re Simply Essentials, LLC*), 78 F.4th 1006, 1007 (8th Cir. 2023) ("Chapter 5 avoidance actions are property of the estate"); *In re Lahijani,* 325 B.R. 282, 288 (9th Cir. BAP 2005) ("While there is some disagreement among courts about the exercise by others of the trustee's bankruptcy-specific avoiding power causes of action, the Ninth Circuit permits such actions to be sold or transferred.") (citations omitted); *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989) ("[P]roperty fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code"); *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1277 (5th Cir. 1983)(fraudulently transferred property is property of the estate even before it is judicially determined that the transfer is fraudulent).

Courts have applied the automatic stay to prevent creditors of a bankruptcy estate from pursuing assets fraudulently transferred out of that estate by reason of the automatic stay. Here, the Delaware Trustee is a creditor in the Florida Case by reason of the EAM POC.   According to the Compl., Defendant is the initial transferee of $250,000 from Meir, and the Subsequent Transferee of EAM.  Applying the rationale that an avoidance *action* itself is property of the estate, the Compl. is a stay violation and a nullity.  *See In re Cold 2005, Inc*., 2011 Bankr. LEXIS 5770 at *5 (October 31, 2011 Bankr. N.D. Ill.).

9

The Florida bankruptcy case *In re Zwirn*, 362 B.R. 536, 538-39 (Bankr. S.D. Fla. 2007) provides guidance. In *Zwirn*, the court found that a third-party plaintiff creditor was stayed from prosecuting a fraudulent transfer claim because it was property of the estate. The *Zwirn* court pursued two paths of reasoning to reach its conclusion. "One line of cases holds that fraudulently transferred property constitutes property of the debtor's estate, pursuant to § 541(a)(1), because the debtor retains an equitable interest in such property. Consequently, those cases state that "§ 362(a)(3) of the Bankruptcy Code stays any act by a creditor to obtain possession of property of the estate." (citations and internal quotes omitted). *Id*. at *538. A "second line of cases holds that any property that the trustee recovers, pursuant to § 550 of the Bankruptcy Code, becomes property of a debtor's estate under § 541(a)(3); until the trustee recovers the property, however, it does not constitute property of the debtor's estate .... Nonetheless, these courts hold that any state court lawsuit to recover a fraudulent conveyance *violates the automatic stay under § 362(a)(1) as an action to recover a claim against the debtor.* Regardless of the difference in rationale for their conclusions, *all* courts appear to agree that commencing a bankruptcy case stays fraudulent conveyance actions by a creditor, thereby ensuring that the estate's interests in the fraudulent transfer claim are properly protected to ensure that the estate and its creditors may receive the benefits." *Id*. at *539 (citations and internal quotes omitted).

The right to seek to avoid the Subsequent Transfers are property of two bankruptcy estates. As of the date of the filing of the Compl., there was no agreement between the respective Delaware and Florida trustees how to proceed. It is respectfully submitted that such tension is resolved by the Delaware Trustee filing the EAM POC. In so doing, the Delaware Trustee submitted to the jurisdiction of the Florida Case for the adjudication of that claim and to receive a distribution from the Florida Case. *See Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S. Ct. 330, 331-32 (1990). The

10

Delaware Trustee should not now prosecute that same claim outside the purview of the Florida Case. It is also axiomatic that the Delaware Trustee is not entitled to two recoveries on the same claim. The clear attempt by the Delaware Trustee to leapfrog the Florida trustee should not be rewarded.

### III. The Compl. Must be Dismissed Because the Initial Transfer to Meir Was Not Avoided First.

#### A. The Plain Text of § 550(a) Requires the Delaware Trustee to Avoid the Initial Transfer to Meir Before he May Recover from Defendant as the Subsequent Transferee.

The Complaint is predicated solely on § 550(a), a recovery statute. Compl. at ¶ 42. That section permits the Delaware Trustee to recover property from a subsequent transferee only "to the extent that a transfer is avoided under [one of the avoidance powers] . . . ." 11 U.S.C. § 550(a). The language of § 550(a) is clear and unambiguous: avoidance precedes, and is a condition to, recovery from a subsequent transferee. Following the plain text of the statute, the Delaware Trustee's failure to avoid the Initial Transfer to Meir prevents the Delaware Trustee from seeking to recover the Subsequent Transfers from Defendant.

#### B. The Rules of Statutory Construction Require the Court to Give Effect to the Plain Meaning of § 550(a).

The Court should not strain the plain language of § 550(a). There is no reason not to give effect to the unambiguous language of section 550's "to the extent that a transfer is avoided . . . ." The verb "avoided" is well-understood: "[t]o render void," *Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, Nat'l Ass'n (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 741 (Bankr. S.D.N.Y. 2008) ("Fabrikant") (quoting Black's Law Dictionary 146 (8th ed. 2004)), or "to annul, vacate, defeat, evade, invalidate," *id.* (quoting Webster's Third New International Dictionary (Unabridged) 151 (1981)). Significantly, the word "avoided" is *not* synonymous with "avoidable." *Id.*

To the extent the Court seeks to find meaning for the term "avoided" other than as set forth above, the Court must read § 550(a) guided by binding rules of statutory construction. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S. Ct. 1026 (1989). The analysis begins with the language of the statute. *Id*. at 241; *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254, 112 S. Ct. 1146 (1992) ("[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Kaufman v. Allstate N.J. Ins. Co*., 561 F.3d 144, 155 (3d Cir. 2009) ("[i]n interpreting a statute, the Court looks first to the statute's plain meaning and, if the statutory language is clear and unambiguous, the inquiry comes to an end.") (citations omitted).

In *Parker v. NutriSystem, Inc*., the Third Circuit held that "[w]here the statutory language is unambiguous, the court should not consider statutory purpose or legislative history." 620 F.3d 274, 277 (3d Cir. 2010) (citations omitted). The Third Circuit explained that, "[i]n determining whether language is unambiguous, we 'read the statute in its ordinary and natural sense.'" *Id*. at 278 (citations omitted). "A provision is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" *Id*. (citations omitted); *see also Friedman's Liquidating Tr. v. Roth Staffing Cos. LP (In re Friedman's Inc.)*, 738 F.3d 547 (3d Cir. 2013) ("Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history."). Further, "just because a particular provision may be, by itself, susceptible to differing constructions does not mean that the provision is therefore ambiguous." *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004).

The plain language of § 550(a) requires the trustee to avoid the initial transfer before seeking recovery from a subsequent transferee. "[T]he Court must look to the statute's 'focus' to determine whether a case involves a domestic application of the statute." *Maxus Liquidating Tr.*

*v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 560 (Bankr. D. Del. 2022) (Quoting *In re Picard*, 917 F.3d 85, 97 (2d Cir. 2019)).  "[T]he trustee could not use § 550(a) to recover property unless the trustee first avoided a transfer under § 548." *Id*. at 561.

In *In re Picard*, the Second Circuit observed:

> "The focus of a statute is the conduct it seeks to regulate, as well as the parties whose interests it seeks to protect.  *See id.*  The district court found that § 550(a) focuses on 'the property transferred' and 'the fact of its transfer.'  On this theory, it concluded that a recovery action under § 550(a)(2) regulates the subsequent transfer of property: that from the initial transferee to the subsequent transferee . . .  But the harm to the estate as a result of its unlawful depletion began with the initial transfer."

917 F.3d 85, 97 (2d Cir. 2019).  Focusing on the statutory language of § 550(a), and the fact that § 548 and § 550 must work in tandem, the Second Circuit concluded, "a trustee cannot use (§) 550(a) to recover property unless the trustee has first avoided a transfer under one of these [avoidance] provisions."  *Id*.

The § 550 requirement that the Delaware Trustee must sue Meir as the initial transferee within the avoidance action deadline should be observed "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"  *United States v. Ron Pair Enters.*, 489 U.S. 235, 424 (1989) (citations omitted). The purpose of any fraudulent transfer action is to redress depletion of the estate, and that *must* start with avoidance of the initial transfers.  *Picard*, 917 F.3d at 98 ("Section 550(a) works in tandem with § 548(a)(1)(A) by enabling a trustee to recover fraudulently transferred property. Recovery is the business end of avoidance. In that sense, § 550(a) is a utility provision, helping execute the policy of § 548(a)(1)(A) by tracing the fraudulent transfer to its ultimate resting place (the initial or subsequent transferee).") (internal citations and quotation marks omitted).  There is nothing in the record that suggests an avoidance action against Meir could not have been accomplished or

13

would have produced a result at odds with avoidance recovery.  The Trustee knew the amount of Sale Proceeds Meir received, Compl. at ¶29, and where he resided.

To the extent the Court considers how the plain text of § 550(a) might conflict with bankruptcy policies, it is black letter law that the plain language of a statute cannot be discarded on the basis of policy considerations.  *Hufft v. Cruz Contracting Corp.*, 643 F. Supp. 2d 344, 359 (S.D.N.Y. 2009) ("policy considerations . . . do not overcome the plain language of [a] statute.") Further, the Delaware Trustee can offer no reason why he could not work within the respective statute of limitations set by §§ 546(a) and 550(f).

### C.    Case Law Enforcing the Plain Meaning of § 550(a).

Even though the case *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.),* 343 B.R. 75 (Bankr. S.D.N.Y. 2006) ("*Enron*"), *rev'd and remanded sub nom., Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron)*, 388 B.R. 489 (S.D.N.Y. 2008) was reversed in a one paragraph opinion, the *Enron* rationale provides guidance and should be applied here.  In *Enron*, the reorganized debtors filed an adversary proceeding against mediate transferees to avoid alleged fraudulent transactions.  The mediate transferees filed motions to dismiss.  The *Enron* court framed and answered the relevant issue as follows:

> "The issue presented is whether recovery, pursuant to 11 U.S.C. § 550(a), of a transfer of a debtor's interest in property from a subsequent transferee requires as a prerequisite that the transfer have previously been avoided, pursuant to the trustee's avoidance powers, against the initial transferee. The Court concludes that although the two actions may be brought simultaneously, the plain language of section 550(a) requires that the transfer first be avoided, i.e., determined to be improper, prior to actual recovery from any transferee."

*Enron*, 343 B.R. at 76.  The *Enron* court found that "[t]he plain language of section 550(a) of the Bankruptcy Code . . . provides that recovery may be sought 'to the extent that a transfer is *avoided* under [the avoidance sections]'."  *Id.* at 81 (citing 11 U.S.C. § 550(a)).  The court's conclusion

14

found further support "in the fact that in those sections of the Code where it was intended that a court merely determine whether a transfer was avoidable, the term 'avoidable' is utilized." *Id.* (citations omitted).

The *Enron* court reviewed the legislative history attendant to § 550 and concluded the Code draws a distinction between two actions, avoidance and recovery, and found "it is first necessary to establish that the transfer was improper and then to establish from whom one may recover it pursuant to § 550(a) ." *Id.*   The *Enron* court explained the importance of establishing the liability of the initial transferee as a gating issue:

> "It is not clear how a determination can be made concerning the propriety of the transfer or the amount of the liability on the initial transfer absent the participation of the initial transferee. That is because it is not clear who would have knowledge of the defenses available to the initial transferee. Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees, subject to any of their additional defenses. Nevertheless, while avoidance must be established before recovery is effectuated, the two actions may be brought simultaneously as long as the recovery is not effected until the transfer has been established to be improper."

*Id.* at 82. The *Enron* court also considered the interplay of subsections § 550(a) and § 550(f) and concluded:

> "if the trustee's pursuit of an avoidance action under [§§ 544, 545, 547, 548, 549, 553(b) or 724(a)] made the statute of limitations provision of section 550(f)(1) operative, and if under section 550(a) no such avoidance action need be brought prior to recovery under that section, then the trustee would generally not bring an avoidance action, as any such action would be unnecessary and only serve to constrain the trustee.  In addition, if the trustee were not required to bring an avoidance action prior to the recovery action, there would effectively be no statute of limitations under section 550(f).  If section 550(f)(1) did not apply because the trustee did not bring a prior avoidance action, the only limitation on the recovery action under section 550(a)  would be section 550(f)(2).  As the trustee generally determines when to seek the closing of a case, there would be in practice no statute of limitations to prevent the trustee from

15

bringing recovery actions.  The Court cannot conclude that the brief language of section 550(a) was intended to thus render the avoidance and statute of limitations provisions ineffective and meaningless." *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.),* 343 B.R. 75 (Bankr. S.D.N.Y. 2006) ("*Enron*"), *rev'd and remanded sub nom., Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron)*, 388 B.R. 489 (S.D.N.Y. 2008)

*Id.* at 83.  Accordingly, the *Enron* court—as this Court should do here—granted the mediate transferees' motion to dismiss because the complaint did not seek to avoid the initial transfers.  *Id.* at 84.

The Code and case law draw a distinction between § 548, which governs avoidance, and section § 550, which governs from whom the trustee may recover the avoided transfer.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Avoidance and recovery are related but distinct concepts. Section 548 governs the avoidance of actually and constructively fraudulent transfers by the debtor. It permits a trustee to 'avoid'—— *i.e.*, cancel——[the alleged fraudulent transfers].  Section 550 authorizes a trustee to recover the property transferred by the debtor to any transferee (initial or subsequent) 'to the extent that a transfer is avoided under [(inter alia)] section 548 . . . of this title.' As a result, before Picard can recover the funds from Appellees, he must first avoid BLMIS's transfers to Appellees.") (citations omitted); *see also Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs.*), 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007) ("Section 550(a) is a remedies section and defines the party from whom a trustee may seek to recover property that is fraudulently transferred or the value or proceeds of such property.").  It is difficult to fathom how a subsequent transferee may be found personally liable to return any amount to the estate before any transfer is avoided.  But that is the relief sought here.

The case *Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.),* 230 B.R. 101 (Bankr. N.D. Ohio 1998) ("*Trans-End*") presents facts similar to the instant case.  There, the

16

chapter 11 trustee filed a complaint against a subsequent transferee. The subsequent transferee moved to dismiss contending that recovery was not permitted without first avoiding the initial transfer. The court agreed.

The *Trans-End* court reached its conclusion by considering the plain text of § 550(a) within the constraint of the rules of statutory construction enunciated by the Sixth Circuit.[8] Within those boundaries, the *Trans-End* court found "[t]he language of § 550(a) is unarguably both unambiguous and plain and it clearly provides for the recovery of fraudulent transfers from initial and subsequent transferees 'to the extent that the transfer is avoided under section … 548.' The Court cannot reconcile the Trustee's argument the transparently plain language of § 550(a) which requires that an initial transfer be avoided under § 548(a) before recovery is sought under that section." *Id*. at 104 (citations omitted).

Reading § 550 as a whole, the *Trans-End* court also considered the interplay of subsections 550(a) and 550(f). The court noted that "if a trustee is not required to first avoid a transfer before seeking recovery, there is no starting point for the statute of limitation period in § 550(f) to begin to run." The court explained:

> "A complete reading of § 550 supports the conclusion that actual avoidance of an initial transfer is required before recovery is sought from subsequent transferees. The Bankruptcy Code sets forth two statutes of limitation for avoidance and recovery of fraudulent transfers: sections 546 and 550(f). Section 550(f) provides for a one-year statute of limitation to seek recovery 'after the **avoidance** of the transfer on account of which recovery under this section is sought.' 11 U.S.C. § 550(f). **This limitation period is only commenced upon the happening**, in this case, **of the avoidance of a transfer under 11 U.S.C. § 548** within the statute of limitation

---

[8] The Sixth Circuit in *Rogers v. Laurain (In re Laurain)*—construing Fed. R. Bankr. P. 4003(b)—noted that statutes "must be read in a 'straightforward' and 'commonsense' manner," and that "when we can discern an unambiguous and plain meaning from the language of a [statute], our task is at an end." 113 F.3d 595, 597 (6th Cir. 1997). The Third Circuit shares the same approach. *See Parker,* 620 F.3d at 277 ("'In interpreting a statute, the Court looks first to the statute's plain meaning and, if the statutory language is clear and unambiguous, the inquiry comes to an end.'") (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. at 253-54).

4927-0141-3708, v. 4

> period set forth in 11 U.S.C. § 546(a).  If the Court were to adopt the Trustee's argument of avoidability, the limitation periods of both § 546 and § 550(f) would be rendered meaningless."

*Id.* at 104 (**emphasis** added).  The court in *Trans-End* also concluded—as should the Court here— that the trustee was barred from attempting to avoid the initial transfer because the statute of limitations period under 11 U.S.C. § 546(a)  had expired.  This Court should find the text of § 550(a) unambiguous[9] and reach the same result as *Trans-End*.[10]

There is ample case law that supports reading the plain text of § 550(a) to find "in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548."  *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992) ("*Slack-Horner*").  In *Slack-Horner,* a chapter 11 trustee sought to avoid a prepetition tax deed conveying property formerly belonging to a debtor from the state [the initial transferee] to a subsequent transferee.  The Tenth Circuit held that because the trustee could not avoid the initial transfer from the debtor to the initial transferee, the trustee could not recover the subject property from the subsequent transferee.

Below is a list of cases that follow this line of reasoning focusing on the plain text of § 550(a)'s phrase "to the extent that a transfer is avoided" as construed in accordance with basic rules of statutory construction. *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007) ("Thus, before the Trustee may obtain an 'actual recovery' from the Movants [subsequent Transferees] under § 550(a) , he must first avoid the underlying initial transfers."); *Geltzer v. Fur Warehouse, Ltd. (In re Furs by Albert & Marc Kaufman, Inc.)*,

---

[9] Some courts, discussed *infra*, treat as synonymous the words "avoided" and "avoidable." This is a legal fiction.  The Code itself draws a distinction.  *Compare* § 550(a) *with* § 502(d).

[10] The decision in *Trans End* has been criticized.  *See Bash v. Textron Fin. Corp.*, 524 B.R. 745 (Bankr. N.D. Ohio 2015).

2006 Bankr. LEXIS 3614, at *27 (Bankr. S.D.N.Y. Dec. 14, 2006) (noting that an "essential element" of a trustee's recovery under § 550(a) was his avoidance of the initial transfer); *Williams v. Mortillaro (In re Res., Recycling & Remediation, Inc.)*, 314 B.R. 62, 69 (Bankr. W.D. Pa. 2004) ("Section 550(a) is a recovery provision and gives rise to a secondary cause of action which applies after the trustee has prevailed under one (or more) of the avoidance provisions found in the Bankruptcy Code."); *Yoppolo v. Liberty Mortg. (In re Morgan)*, 276 B.R. 785, 789 (Bankr. N.D. Ohio 1998) ("[B]efore a trustee is entitled to recover any property previously transferred by the debtor, the trustee must first avoid the underlying transfer."); *Greenwald v. Latham & Watkins (In re TransEnd Tech., Inc.)*, 230 B.R. 101, 105 (Bankr. N.D. Ohio 1998) ("[A] prerequisite to recovery from any transferee is that the initial transfer must first be avoided rather than merely proven to be avoidable."); *Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee.'") (citations omitted); *Indus. & Mun. Eng'g. Inc. v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 759 (Bankr. C.D. Ill. 1995); *Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*, 127 B.R. 471, 473 (Bankr. E.D. Okla. 1991); *Brandt v. Hicks, Muse & Co. (In re Healthco International, Inc.)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("[a]n avoided 'transfer' is recoverable only from a 'transferee.' If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the **'transfer is avoided'** with respect to the 'initial transferee.'"); *Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.)*, 168 B.R. 408, 419 (Bankr. D. Ariz. 1994)("A trustee may recover an **avoided** transfer not only from the initial transferee but also from certain subsequent transferees down the chain.") (**emphasis** added).

### D.  Giving Effect to the Plain Meaning of § 550(a) is Consistent with § 550(f).

The Bankruptcy Code sets deadlines corresponding to the trustee's two separate and distinct powers: avoidance and recovery.[11]  Section 546(a) sets the statute of limitations for avoidance.  A trustee must initiate an avoidance action within two years after the filing of the bankruptcy petition.[12]  Section 550(f) sets the statute of limitations for recovery.  Under § 550(f), a trustee must initiate a recovery action against an initial/mediate transferee within "one year after the avoidance of the transfer." The sequencing of § 550(a)—requiring avoidance as a precondition to recovery—is consistent with the application of the respective statute of limitations for §§ 546(a) and 550(f).

If a trustee is not required to avoid the initial transfer before seeking recovery, § 550(f) would be surplusage.[13]  There would be no time limit for seeking recovery. Congress did not intend, and its legislation should not be interpreted, to render a limitations period meaningless by obviating a trustee's need to undertake the predicate action that would trigger that period. *See generally Enron Corp. v. Int'I Fin. Corp. (In re Enron Corp.),* 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006) ("The Court cannot conclude that the brief language of section 550(a) was intended to thus render the avoidance and statute of limitations provisions ineffective and meaningless.").

---

[11] *See Santee v. Northwest Nat'l Bank*, 127 B.R. at 473 ("[Section] 550(a) is a secondary cause of action after a properly appointed representative has prevailed pursuant to the avoidance sections of the Code.  Section 550(a) stands as a recovery statute only and not as a primary avoidance basis for an action, as it will only survive when coupled with the transfer avoidance sections of the Code.").

[12] A statute of limitations is not a statute of repose and may be extended.  *See* the *IAS* case described *infra.*

[13] *See Perez v. Westchester Cnty. Dep 't of Corr.*, 587 F.3d 143, 155 (2d Cir. 2009) ("[W]e construe statutes to avoid surplusage whenever possible."). Not surprisingly, the Third Circuit Court accepts this view. "[A]ccording to the '**anti-surplusage' canon**, '[i]t is our duty to give effect, if possible, to every clause and word of a statute.'" *See United States v. Jackson*, 964 F.3d 197, 203 (3d Cir. 2020).  "[T]he **canon against surplusage** is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Rowland v. Bissell Homecare, Inc.,* 73 F.4th 177, 182 (3d Cir. 2023) (**emphasis** added) (citations omitted).

4927-0141-3708, v. 4

E.   **Excusing Avoidance of the Initial Transfer Unfairly Tilts Litigation against Defendant in Favor of the Delaware Trustee.**

Due Process and Rule 8 notice pleading concerns arise when a trustee elects not to sue an initial transferee to first avoid transfers and instead directly sues a subsequent transferee to recover the transfers.  It is unfair to saddle "subsequent transferees with the outcome of an avoidance action in which they did not get to participate or which was the product of a default or consent judgment." *Tibble v. Farmers Grain Express, Inc. (In re Mich. Biodiesel, LLC),* 510 B.R. 792, 797 (Bankr. W.D. Mich. 2014) (citations omitted).  This places the subsequent transferee at a severe disadvantage.  Section 550(a) should not be read to tilt the law in favor of a plaintiff or relax the *Twombly/Iqbal* Pleading Requirement.

The instant Complaint makes that point.  It completely fails to describe the Defendant's business relationship, if any, with either the Debtor or Meir beyond stating that Defendant received certain Subsequent Transfers from the Sale Proceeds and resides the State of New York.[14]  Compl. at ¶1, 8. That falls far short of Rule 8's directive to plead facts and provide notice to the Defendant of the Complaint against him.  Defendant cannot formulate affirmative defenses to the Complaint's factual waste land.  *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.),* 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006) ("It is not clear how a determination can be made concerning the propriety of the transfer or the amount of the liability on the initial transfer absent the participation of the initial transferee. That is because it is not clear who would have knowledge of the defenses available to the initial transferee."); *see also Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 892-93 (7th Cir. 1988) ("The initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did.").

---

[14] Defendant denies he is a resident of New York.

21

IV.    **Count I Does Not Meet the *Twombly/Iqbal* Pleading Standard Because the Complaint Fails to Sufficiently Demonstrate That the Challenged Transfers Are an Interest of the Debtor in Property or Proceeds Thereof.**

"To state a claim under*, a* trustee must satisfy the statute's three separate requirements. First, a trustee must invoke a transfer that was avoided under one of the enumerated sections of the Bankruptcy Code. Second, a trustee must plausibly allege that he seeks to recover "the property transferred" or "the value of such property." Third, a trustee must plausibly allege that the defendants are either "the initial transferee," "the entity for whose benefit such transfer was made," or "any immediate or mediate transferee of such initial transferee." *Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co., LLC),* 964 F.3d 958, 966 (10 Cir. 2020).

Here, the Compl. fails to meet the first two elements of § 550.  As noted, the Initial Transfers have not been avoided.  The Compl. also fails to trace the Subsequent Transfers back to EAM/Sale Proceeds.  The Compl. alleges that the Title Company distributed $1,628,158.58 from the Sale Proceeds to "Meir's Chase Bank account ending in -2895."  Compl. at ¶¶ 25 & 29 but fails to allege the date(s) of such alleged transfer(s). *Id*.  The Compl. alleges that the "Insiders subsequently transferred $250,000.00 of the Sale Proceeds to the Defendant (the "Subsequent Transfers")."  Compl. at 36.  No date is provided for the date(s) of the transfers by the Insiders. The Compl. also alleges that "[t]he Insiders' bank accounts from which the Subsequent Transfers were made had small balances prior to receiving the Initial Transfers." *Id*. at 38.  These allegations are internally inconsistent with Ex. A which alleges that only Nir Meir, not EAM or all of the Insiders, transferred $250,000 to Defendant during the two-month period, 4/6/2021 to 5/5/2021.

Ex. A alleges that Nir Meir made each alleged Subsequent Transfer from JP Morgan Chase account ending in -2895, but Ex. A fails to state the exact amounts in such account at the time each transfer was made between 4/6/21 and 5/5/21 or trace the source of **all** funds in the JP Morgan Chase account to EAM or the Title Company.  This is certainly information capable of being

22

known and ordinarily would be expected in a § 548 action.  Ex. A provides a "Note" that states, [a]ll transferred funds sourced from Debtor EAM Sale Proceeds of 40 Meadow Lane property." The "Note" is not sufficiently plead, however.  The details for the averment should be provided. Without particularized facts, the Note merely states an overly broad legal conclusion; *i.e.*, that the Subsequent Transfers are all property of the EAM estate. The Note must be disregarded by the Court in assessing the sufficiency of the Complaint.

A.    **There Are Cases Requiring That The Delaware Trustee Only Show the Initial Transfers Are Avoidable Before Seeking Recovery From The <u>Subsequent Transferee.</u>**

There are cases that interpret § 550(a) "broadly." These cases read as synonymous the terms "avoided" and "avoidable."  But, as noted, the two terms have separate meanings under the Bankruptcy Code.  *Compare* § 550(a) *with* § 502(d).  The Court should not adopt this misreading of the term "avoided."  But even if it did, the Delaware Trustee still cannot show the initial transfer to Nir Meir is "avoidable" because the avoidance action deadline to recover the initial transfers has expired.  The only alternative for the Court is to re-write § 550(a) and omit entirely the phrase "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) . . . ."  11 U.S.C. § 550(a).  Only by omitting that language can the Delaware Trustee seek to recover $250,000 from Defendant without ever having to demonstrate against *any* transferee the elements of § 548.

Cases that incorrectly substitute the word "avoidable" for "avoided" in § 550(a) generally fall into one of several categories:  (a) the trustee already has an adversary complaint pending against the initial transferee that is incorporated by reference into the adversary complaint against the subsequent transferee; (b) the court ignores the fact that the Code itself treats the words

"avoided" and "avoidable" separately; (c) the court treats as synonymous the adjective[15] "avoidable" and the verb[16] "avoided"; (d) the trustee has already secured a consent or default judgment against the initial transferee; or (e) the court incorrectly relies on bankruptcy "policy" to trump the plain language of § 550(a). These cases eschew reading the plain meaning of § 550(a) and, in doing so, violate binding rules of statutory construction enunciated by the Supreme Court and circuit courts, including the Third Circuit. The legal term "avoided"—used and well-understood every day in Bankruptcy Courts across the country—is not ambiguous or capable of two separate independent meanings.

The Eleventh Circuit adopted this relaxed view of § 550(a) in *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs.*), 408 F.3d 689 (11th Cir. 2005) ("*IAS*"). It is noteworthy that the court in *IAS* was faced with a very unique set of facts and an elaborate fraudulent scheme years in the making. Four years before *IAS* filed for bankruptcy relief, the debtor's founder and sole shareholder hired an asset protection specialist who "transferred assets more than one hundred times among twenty-three different entities" in an attempt to shield them from avoidance and recovery; a "complex and intentionally insidious ... plan." *Id.* at 697.

The Eleventh Circuit found that the trustee could recover from successive transferees without first avoiding the initial transfer provided the trustee could demonstrate that the initial transfer was avoidable. In reaching its conclusion, the Eleventh Circuit surveyed cases permitting this and characterized as "ambiguous" § 550(a)'s phrase "to the extent that a transfer is avoided." *Id*. at 707. This gave the Eleventh Circuit license to look beyond the statute's otherwise plain

---

[15] *See Fabrikant,* 394 B.R. at 741.

[16] *Id*.

meaning to fathom Congress's intent in enacting it.[17]   According to the Eleventh Circuit's reasoning, the strict interpretation of § 550(a) requires a "bizarre exercise in futility" not intended by Congress:

"The strict interpretation of 550(a) produces a harsh and inflexible result that is counterintuitive to the nature of avoidance actions.  If the initial transaction must be avoided in the first instance, then any streetwise transferee would simply re-transfer the money or asset in order to escape liability.  The chain of transfers would be endless." *Id.* at 704.

This is hyperbole.  The § 546(a) statute of limitations provides an ample investigatory period of 2 years that also may be extended by consent or cause shown.  Trustees have ample time to take pre-suit discovery through continuations of the 341 meeting or Rule 2004.  In a large or complex case, if the trustee is chasing the money, the trustee in no way is rushed or forced to file a complaint against an initial transferee.  Even if the trustee could directly sue a mediate transferee, that does not solve the problem of endless further transfers.

The *IAS* expressly acknowledged, "[w]e are mindful that our reading of § 550(a) does not embrace a strict construction. We believe, however, that it does address the ambiguity of the words 'to the extent that a transfer is avoided.'"   *Id* at 707.   "Because those words are ambiguous, it is appropriate to look beyond the plain language of the statute." *Id.*  As noted, binding case law does not permit a court to look beyond the plain language of a statute to reach a desired outcome.

The *IAS* holding (and its progeny) permits actions to be brought by a trustee against mediate transferees under § 550(a) without first avoiding any transfer against an initial transferee under

---

[17] It is axiomatic, however, that where, as is the case of § 550, the plain language of the statute is unambiguous, a resort to legislative history is unwarranted. *See, e.g., ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 427 (2d Cir. 2009); *Sticka v. Bestline, Inc. (In re Attaway)*, 180 B.R. 274, 279 (Bankr. D. Or. 1995) (the language of Section 550(a) is "unambiguous" and allows the trustee to recover transfers only "to the extent any transfer is avoided").

§ 548(a).  This inappropriately conflates the well-recognized demarcation between the trustee's avoidance and recovery powers and victimizes subsequent transferees.[18]  Section 550, governing *recovery*, was never intended to be weaponized as a standalone *avoidance* power.  Section 546(a), "Limitations on avoiding powers", does not apply to or limit the time within which § 550(a) actions may be brought.  The *IAS* interpretation of § 550(a) leads to trustee gamesmanship.  The Complaint here is predicated solely on § 550(a), not § 548(a).  Because § 546(a) does not apply, this Complaint could be brought at any time before the case is closed, a result not contemplated by the Code.

There are other decisions aligned with *IAS* construing as synonymous the words "avoided" and "avoidable."  For example, the court in *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455 (N.D. Cal. 1996) ("*Richmond Produce*") affirmed the bankruptcy court's decision permitting the trustee to recover a fraudulent transfer from a mediate transferee without first seeking avoidance from the initial transferee. The reasoning in *Richmond Produce* is far from linear.  The *Richmond Produce* court's analysis jumps over the lead in, qualifying language of § 550(a) and lands on "[s]ection 550 clearly provides for recovery from 'the initial transferee . . . *or* the entity for whose benefit the transfer was made *or*. . . any immediate or mediate transferee'." *Id*. at 463 (citations omitted). *Richmond Produce* then reverts to the qualifying language and (without independent analysis) states, "this circuit has explicitly rejected the argument that § 550(a) . . . mean[s] that each element of § 547 (or 548) must be satisfied with respect to the party from whom recovery is sought under § 550 . . . . The **'to the extent that' language** simply

[18] This has happened before.  *See Levit v. Ingersoll Rand Fin. Corp.* (*In re V.N. Deprizio Constr.*), 874 F.2d 1186 (7th Cir. 1989) (permitting trustee one year to recover a transfer to an outside creditor that benefitted an insider) and the § 550(c) remedy adopted as part of the 1994 amendments; the extended recovery period applies but the trustee can only recover from the insider).

26

4927-0141-3708, v. 4

recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of a transfer is recoverable." *Id.* (**emphasis** added) (citations and internal quotation marks omitted).[19]  But even so, the **"to the extent that"** *Richmond Produce* reasoning does not counter Defendant's argument that a transfer (or a part thereof) must *first* be avoided before the trustee can exercise recovery powers under § 550(a).  The *Richmond Produce* decision raises more questions than it answers.  The court concluded, "[i]n short, once the trustee proves that a transfer is avoidable under section 548, he may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made. Thus, because the bankruptcy court correctly found BanCal to be an immediate transferee of a fraudulent and thus avoidable transfer of RPC funds, BanCal may be held liable for the transfer, notwithstanding the absence of a suit or recovery against Clow." *Id*.

But how can a trustee demonstrate a transfer is avoidable without ever filing a complaint or seeking relief under § 548 that contains plausible allegations of avoidance?  *See also Sklar v. Susquenanna Bank (In re Global Prot. USA, Inc*.), 546 B.R. 586, 619 (Bankr. D.N.J. 2016)  ("But the majority of courts hold that 'a transfer maybe found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee.' . . . The Third Circuit has not weighed in on the issue . . . .") (citations omitted); *Advanced Telcomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 321 B.R. 308, 328 (Bankr. M.D. Fla. 2005) (there must be some showing that the initial transfer is *avoidable*, not *avoided*, to recover from the subsequent transferee); *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 916 (Bankr. D. Nev. 2005)  (adopting the holding of *IAS*); *Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.*), 220 B.R. 331, 338 (Bankr. W.D. Tex 1998) ("Once it has been

---

[19] The *Richmond Produce* reasoning relies on *Deprizio*, since abrogated.

established that a qualified transfer has been made, § 550 provides for recovery against either the initial transferee . . . or 'the entity for whose benefit such transfer was made.'"); *Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.)*, 371 B.R. 589, 638 (Bankr. D. N.H. 2007) (citing *IAS*).

As noted, the instant Complaint is bereft of any allegations to support § 548 relief. The Compl. alternatively states Defendant received the Subsequent Transfers from either the Insiders or just Meir and incorrectly alleges Defendant resides in New York.  There is no presumption of insolvency in a fraudulent transfer case.  The rest of the allegations are boilerplate or legal conclusions.[20] The Trustee has the burden of plausibly alleging insolvency at the time or each transfer but failed to do so.   "For purposes of § 548, solvency is measured at the time the debtor transferred value, not at some later or earlier time."  *Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 154 (3d Cir. 1996).  The Compl. fails to plausibly plead a §548 count.

## V.      Count II, For Disallowance of Claims, Should Be Dismissed If Count I Is Dismissed.

Because Count I fails as set forth above, the Delaware Trustee is not entitled to relief under 11 U.S.C. § 502(d) and the Court should dismiss Count II.  To the extent the Complaint seeks attorney's fees against Defendant that request also should be denied. This Court has adopted the American Rule.  *See, e.g., Smith v Weinshanker (In re Draw Another Circle)*, 602 B.R. 878 (Bankr. D. Del. June 13, 2019). There, the Court stated, "[u]nder the American Rule, 'absent express statutory provisions to the contrary, each party involved in litigation will bear only their individual attorneys' fees no matter what the outcome of the litigation.'"  *Id*. at 906.  Consistent with *Draw*

---

[20] *See* ¶¶ 30, 33, 34, 40 & 42.

*Another Circle*, and because there is no statutory basis or contract provision providing for attorneys' fees in this case, the Court should dismiss the Trustee's non-Count request for attorneys' fees with prejudice. Similarly, the Complaint provides no statutory or other basis to support a claim for pre-judgement interest.

## <u>RESERVATION OF RIGHTS</u>

Pursuant to Local Bankr. Rule 7012-1, Defendant does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Defendant reserves all rights and defenses to the Complaint and makes no waiver, implicit or otherwise, by its assertions herein. In particular, Defendant reserves all rights to assert defenses pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12 and all affirmative defenses.

## <u>CONCLUSION</u>

For the reasons set forth above, the Defendant respectfully requests that the Court grant the Motion, dismiss the Complaint and grant the Defendant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: June 18, 2025
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com

*Counsel to the Defendant*

4927-0141-3708, v. 4