## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EAM 40 MEADOW LANE LLC,<br><br>               Debtor. | Case No. 22-10293 (BLS)<br><br>Chapter 7 |
| GEORGE L. MILLER, in his capacity as<br>Chapter 7 Trustee for the bankruptcy estate<br>of EAM 40 MEADOW LANE LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>DHRUV PIPLANI,<br><br>               Defendant. | Adv. Pro. No. 24-50026 (BLS)<br><br>Re Doc. No. 22, 23 |

## TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION BY DHRUV PIPLANI TO DISMISS THE COMPLAINT

John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2000
jcarroll@cozen.com
sfraser@cozen.com

*Counsel for George L. Miller,
Chapter 7 Trustee*

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

SUMMARY OF ALLEGATIONS IN THE COMPLAINT............................................................. 4

ARGUMENT ................................................................................................................... 6

    I.      Legal Standards applicable to the Motion to Dismiss. ......................................... 6

    II.     The Trustee has a statutory right to pursue the Complaint and recover the Subsequent Transfers from the Defendant............................................................... 7

    III.    The Motion should be denied because Section 550(a) of the Bankruptcy Code does not require the Trustee to avoid the Insider Transfers before recovering the Subsequent Transfers from the Defendant................................... 10

    IV.    The Motion should be denied because Count I satisfies the *Twombly/Iqbal* pleading standard. .............................................................................................. 17

    V.     The Defendant's request to dismiss Count II of the Complaint must be denied............................................................................................................... 20

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Telecomm. Network, Inc. v. Allen, et al. (In re Advanced Telecomm.*
*Network, Inc.),*
321 B.R. 308 (Bankr. M.D. Fla. 2005), *subsequently rev'd on other grounds,*
490 F.3d 1325 (11th Cir. 2007) ..................................................................................12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................7, 20

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................................................20

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011)..........................................................................................7

*Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.),*
220 B.R. 331 (Bankr. W.D. Tex. 1998)......................................................................12

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.,*
879 F.3d 79 (3d Cir. 2018)............................................................................................7

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.),*
343 B.R. 75 (Bankr. S.D.N.Y. 2006) .........................................................................16

*Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron Creditors*
*Recovery Corp.),*
388 B.R. 489 (S.D.N.Y. 2008)....................................................................................16

*Guffy v. Brown, Jr., et al. (In re Brown Med. Ctr., Inc.),*
2017 WL 5067603 (S.D. Tex. Sept. 11, 2017) ..........................................................11

*IBT Int'l Inc. v. Northern (In re International Admin. Servs., Inc.),*
408 F.3d 689 (11th Cir. 2005) .......................................................................10, 14, 15

*In re Bake-Line Grp., LLC,*
359 B.R. 566 (Bankr. D. Del. 2007) .............................................................................8

*In re Bernard L. Madoff Inv. Sec. LLC,*
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................................18, 19

*In re Diamond Fin. Co., Inc.,*
658 B.R. 748 (Bankr. E.D.N.Y. 2024)........................................................................19

ii

*In re Giant Gray, Inc.*,
    629 B.R. 814 (Bankr. S.D. Tex. 2020) .................................................................12

*In re Prosser*,
    534 F. App'x 126 (3d Cir. 2013) ........................................................................19

*In re Zwirn*,
    362 B.R. 536 (Bankr. S.D. Fla. 2007).................................................................8

*Kendall v. Sorani (In re Richmond Produce Co., Inc.)*,
    195 B.R. 455 (N.D. Cal. 1996) ....................................................................11, 14

*Leonard v. Optimal Payments Ltd. (In re National Audit Def. Network)*,
    332 B.R. 896 (Bankr. D. Nev. 2005) ...................................................................12

*MC Asset Recovery LLC v. Commerzbank AG, et al. (In re Mirant Corp.)*,
    2010 WL 8708772 (Bankr. N.D. Tex. Apr. 22, 2010).........................................12

*Mendelsohn v. Roslyn, LLC (In re Leff)*,
    631 B.R. 106 (Bankr. E.D.N.Y. 2021).................................................................11

*Miller v. Monarch Apparel Group, Inc. (In re J&M Sales Inc.)*,
    644 B.R. 440 (Bankr. D. Del. 2022) ......................................................10, 13, 17

*Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP*
    *Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*,
    394 B.R. 721 (Bankr. S.D.N.Y 2008) .................................................................12

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*,
    496 F. Supp. 2d 404 (D. Del. 2007)....................................................................7

*Roumeliotis v. Nash Eng'g Holdings, LLC, et al. (In re Nash Eng'g Co.)*,
    2024 WL 3429349 (D. Conn. July 15, 2024) ......................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2024 WL 2839330 (Bankr. S.D.N.Y. June 4, 2024)............................................11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (*citing In re Enron Creditors Recovery*
    *Corp.*, Hearing Transcript (Enron Transcript), No. 07–6597, Dkt. No. 32, Apr.
    16, 2008, at p. 38, lines 11–15).........................................................................16

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    653 B.R. 793 (Bankr. S.D.N.Y. 2023) ................................................................11

*Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013)........................................................................11, 14

78719225\2

*Sklar v. Susquehanna Bank (In re Glob. Prot. USA, Inc.)*,
  546 B.R. 586 (Bankr. D.N.J. 2016) ...................................................................12

*Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*,
  389 B.R. 721 (B.A.P. 9th Cir. 2008) ....................................................10, 14, 16

**Statutes**

11 U.S.C. §§ 548(a)(1)(A) ..............................................................................2, 6, 19

11 U.S.C. § 548(c) ........................................................................................13, 14, 15

11 U.S.C. § 550 .................................................................................................. *passim*

11 U.S.C. § 550(a) ............................................................................................. *passim*

11 U.S.C. § 550(a)(1) .................................................................................6, 10, 15

11 U.S.C. § 550(a)(2) ........................................................................................ *passim*

11 U.S.C. § 550(f) ...................................................................................................16

**Rules**

Fed. R. Bankr. P. 7012 .............................................................................................6

Fed. R. Civ. P. 12(b)(6) ...........................................................................................6

Fed. R. Civ. P. 19 ...................................................................................................12

**Other Authorities**

124 Cong. Rec. H32400 (Sept. 28, 1978) .........................................................15

124 Cong. Rec. S34000 (Oct. 5, 1978) ..............................................................15

Matthew Haag, William K. Rashbaum & Jonah E. Bromwich, Prominent N.Y.
  Developer Arrested on Charges Tied to Vast Fraud Scheme, The New York
  Times (Feb. 6, 2024) ...........................................................................................6

George L. Miller, the Chapter 7 Trustee (the "Trustee") for the Chapter 7 bankruptcy estate of EAM 40 Meadow Lane LLC (the "Debtor"), by and through his undersigned counsel, submits this response in opposition (the "Response") to the *Motion by Dhruv Piplani to Dismiss The Complaint* [A.D.I. 22] (the "Motion") and the accompanying *Memorandum of Law in Support of Motion by Dhruv Piplani to Dismiss The Complaint* [A.D.I. 23] (the "MOL") filed by defendant Dhruv Piplani (the "Defendant").

## NATURE AND STAGE OF THE PROCEEDINGS

1.      The Trustee commenced the above-captioned adversary proceeding (this "Adversary Proceeding") on April 5, 2024 by filing the *Complaint* (the "Complaint") to avoid and recover all subsequent transfers of the Sale Proceeds (term defined below) made to the Defendant pursuant to section 550(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code"). [A.D.I. 1].

2.      On January 21, 2025, this Court entered *Judgment by Default* (the "Judgment") against the Defendant in the amount of $250,000 plus court filing costs in the amount of $350. [A.D.I. 14].

3.      On May 5, 2025, this Court entered an *Order Approving Stipulation To Re-Open Adversary Proceeding And Vacate Entry Of Default And Default Judgment* [A.D.I. 21], pursuant to which the parties agreed to, among other things, re-open the adversary proceeding and vacate the Judgment.

4.      On June 18, 2025, the Defendant moved to dismiss the Complaint by filing the Motion and the accompanying MOL.

## SUMMARY OF ARGUMENT[1]

5.       This Adversary Proceeding is a simple, straightforward action to recover transfers of an interest of the Debtor in property from a subsequent transferee pursuant to section 550(a)(2) of the Bankruptcy Code.  The Trustee seeks to recover $250,000 from the Sale Proceeds from the sale of 40 Meadow Lane, a luxury home owned by the Debtor, which were siphoned-off from the Debtor's Estate at the direction of Nir Meir, the manager of the Debtor's managing member, and subsequently transferred from Nir Meir's bank account to the Defendant.

6.       In an effort to skirt liability to the Debtor's Estate, the Defendant moves to dismiss the Complaint on the basis that the Trustee's claim to recover the $250,000 in Subsequent Transfers under section 550(a)(2) fails as a matter of law.  According to the Defendant, the Trustee is not permitted to pursue a recovery action against him unless and until the Trustee successfully avoids the Insider Transfer to Nir Meir—a chapter 7 debtor under indictment by the Manhattan District Attorney in the state of New York who had been incarcerated at Rikers Island on and off since his arrest.  Since the Trustee did not file a complaint against the bankrupt and incarcerated Nir Meir prior to the expiration of the section 546(a) deadline to commence avoidance actions, the Defendant insists that the Trustee is out of luck.[2] *See* MOL, 23. This erroneous interpretation of section 550(a)(2) is the linchpin of the Defendant's Motion.  For this reason and for the reasons explained below, the Motion should be denied.

7.       <u>First</u>, the Motion should be denied because Nir Meir's bankruptcy filing has no bearing on the Trustee's statutory right to recover the Subsequent Transfers from the Defendant

---

[1] Any capitalized terms not defined in this section shall have the meanings ascribed to them below.

[2] The Defendant ignores the fact that the Trustee timely filed a proof of claim on behalf of the Debtor's Estate and against Nir Meir's bankruptcy estate to preserve the Estate's claims against Nir Meir, including the Trustee's claims to avoid transfers of the Sale Proceeds pursuant to sections 548(a)(1)(A) and/or 548(a)(1)(B).

under section 550(a)(2) of the Bankruptcy Code.  To accept the Defendant's argument to the contrary would have the effect of nullifying section 550(a)(2) of the Bankruptcy Code whenever an initial transferee of a fraudulent transfer also files for bankruptcy.

8.    <u>Second</u>, the Motion should be denied because section 550(a)(2) of the Bankruptcy Code does not require a trustee to avoid the initial transfers made to an initial transferee before seeking to recover from a subsequent transferee.  The Defendant urges this Court to adopt what has been widely criticized as the "harsh and inflexible" interpretation of section 550(a)(2) propounded by a small handful of courts, and rule that the Trustee is required to actually avoid the Insider Transfers to Nir Meir ***prior to*** seeking recovery of the Subsequent Transfers from the Defendant. But the overwhelming majority of courts – including this Court – disagree and recognize that section 550(a)'s qualifying language "to the extent that a transfer is avoided" does not require a successful avoidance action against the initial transferee before recovery may be had from a subsequent transferee.

9.    <u>Third</u>, the Motion should be denied because Count I of the Complaint satisfies the *Twombly/Iqbal* pleading standard.  Contrary to the Defendant's contention, the Complaint alleges facts sufficient to support the inference that the Subsequent Transfers originated with the Debtor, and to establish the Defendant as a subsequent transferee of the Sale Proceeds.

10.    <u>Finally</u>, because Count I of the Complaint plausibly states a claim for recovery under section 550(a)(2) of the Bankruptcy Code, the Defendant's request to dismiss Count II of the Complaint should be denied.

78719225\2

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT[3]

11.     In or around December 2013, the Debtor acquired the real property located at 40 Meadow Lane, Southampton, New York ("40 Meadow Lane") for a purchase price of $10.5 million. Comp., ¶¶11,12.  The Debtor acquired the property for the purpose of tearing down the existing home and building a new luxury home. *Id.*, ¶13.  In connection with the construction of the new luxury home, Nir Meir caused the Debtor to incur significant debts. *Id.*, ¶14.

12.     In 2020, Nir Meir began using the Debtor's assets as collateral for his own personal loans. *Id.*, ¶21.  By early 2021, creditors were closing in on Nir Meir. *Id.*, ¶22.  In order to evade his creditors, Nir Meir, with the help of others, concocted a scheme to sell 40 Meadow Lane, thereby stripping the Debtor of its principal asset, and hide the sale proceeds from creditors. *Id.*, ¶22.

13.     On April 5, 2021, Nir Meir caused the Debtor to sell 40 Meadow Lane together with certain furnishings to a third-party for a total of $44,908,656 (the "Sale Proceeds"). *Id.*, ¶23. Despite the Debtor holding title in fee simple to 40 Meadow Lane, the Debtor received none of the consideration for the sale of the property. *Id.*, ¶23.  Upon the close of the sale, Advantage Title Agency, Inc. (the "Title Company"), at the direction of Nir Meir, disbursed a portion of the Sale Proceeds as follows: (i) $2,000,000 to a JPMorgan Chase Bank, N.A. ("Chase Bank") account ending in -0193 in the name of Ermitage One LLC ("Ermitage"); (ii) $10,587,387.52 to a Chase Bank account ending in -5760 in the name of Nir Meir's wife, Ranee Bartolacci ("Bartolacci"); and (iii) $1,628,158.58 to Nir Meir's Chase Bank account ending in -2895. *Id.*, ¶25.  Following the disbursement of the Holdover Escrow, the Title Company transferred a total of $14,415,546.10

---

[3] All capitalized terms not defined herein shall have the meanings ascribed to them in the Trustee's Complaint.

78719225\2

(the "Insider Transfers") from the Sale Proceeds to Nir Meir, Bartolacci and Ermitage (the "Insiders"). *Id.*, ¶31.

14.     Prior to receiving the Insider Transfers, Nir Meir's Chase Bank account ending in -2895 had a small balance. *Id.*, ¶38.  Nir Meir subsequently transferred a total of $250,000.00 of the Sale Proceeds from his Chase Bank account ending in -2895 to the Defendant (the "Subsequent Transfers") on the dates and in the amounts identified on Exhibit A to the Complaint. *See Id.*, ¶¶36, 37, Ex. A.  Specifically, as set forth in greater detail on Exhibit A to the Complaint, Nir Meir made three (3) transfers to the Defendant between April 6, 2021 and May 5, 2021, totaling $250,000.00. *Id.*, Ex. A.

15.     As a result of the sale of 40 Meadow Lane and the aforesaid disbursements of all the Sale Proceeds, the Debtor was left as an empty shell.  *Id.*, ¶34.  Nir Meir knew or should have known that selling 40 Meadow Lane and transferring the Sale Proceeds away from the Debtor, including to the Insiders, would leave the Debtor with unreasonably small capital to pay its debts as they came due. *Id.*, ¶35.

16.     Nevertheless, Nir Meir authorized and facilitated the disbursements of the Sale Proceeds with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted on or after the date the disbursements were made.  *Id.*, ¶32.  Moreover, the Insider Transfers to the Insiders were made in exchange for less than reasonably equivalent value at a time when the Debtor was insolvent or became insolvent as a result of the disbursements. *Id.*, ¶33.

17.     On February 1, 2024, Nir Meir filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Florida, thereby

initiating the bankruptcy case styled *In re Nir Meir*, Case No. 24-11047-LMI (the "Meir Bankruptcy Case").  As a result, Nir Meir is protected by the automatic stay.

18.     Shortly thereafter, on February 7, 2024, Manhattan District Attorney Alvin L. Bragg, Jr. announced the indictment of HFZ Capital, Nir Meir and others, for allegedly stealing more than $86 million from investors, subcontractors, and New York City through a series of frauds and schemes that began in 2015. *Id.*, ¶16. The indictments contain allegations of widespread fraud primarily spearheaded by Nir Meir, as well as allegations that Nir Meir misappropriated investor and lender proceeds to fund his lavish lifestyle. *Id.*  Nir Meir was taken into custody on the evening of February 5, 2024, at the 1 Hotel South Beach in Miami and was extradited to New York City on the charges.[4]

19.     On April 5, 2024, the Trustee filed a proof of claim, Claim No. 2-1, on behalf of the Debtor's Estate and against Nir Meir's bankruptcy estate seeking damages in the amount of at least $22,605,546.10, to preserve the Estate's claims against Nir Meir, including the Trustee's claims to avoid transfers of the Sale Proceeds authorized and facilitated by Nir Meir pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B) and to recover the transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550(a)(1) (the "EAM Proof of Claim").

## **ARGUMENT**

### **I.      Legal Standards applicable to the Motion to Dismiss.**

20.     The standard for deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is highly deferential to the non-moving party.  When reviewing a motion to dismiss under Rule 12(b)(6), made applicable hereto by Rule 7012 of the Federal Rules of

---

[4] *See* Matthew Haag, William K. Rashbaum & Jonah E. Bromwich, Prominent N.Y. Developer Arrested on Charges Tied to Vast Fraud Scheme, The New York Times (Feb. 6, 2024), https://www.nytimes.com/2024/02/06/nyregion/nir-meir-hfz-arrested-developer.html.

78719225\2

Bankruptcy Procedure, the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018). The Supreme Court instructed that a pleading must nudge claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).

21.    The Third Circuit follows a three-step process to determine the sufficiency of a complaint:

> First, the court must "take note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (*quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

22.    The movant carries the burden of showing that the dismissal is appropriate. *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

**II.    The Trustee has a statutory right to pursue the Complaint and recover the Subsequent Transfers from the Defendant.**

23.    As an initial matter, the Defendant argues for dismissal of the Complaint on the grounds that it violates the automatic stay imposed by the Meir Bankruptcy Case. He contends that "the same transfers of funds may be avoided and recovered by both bankruptcy estates[.]" *See*

MOL, 1.[5]   And since Nir Meir filed for bankruptcy before the Trustee filed his Complaint, the Complaint is void as a violation of the automatic stay.  *See* MOL, 1.

24.     Contrary to the Defendant's contention, Nir Meir's bankruptcy filing has absolutely no bearing on the Trustee's statutory right to recover the Subsequent Transfers from the Defendant. Indeed, the Defendant concedes that the Trustee has a legal right to seek recovery of the Subsequent Transfers and that such an action is property of the EAM Estate.  *See* MOL, 10.  Yet, he insists that because the Trustee is a creditor in the Meir Bankruptcy Case by virtue of the EAM Proof of Claim, the Trustee cannot pursue claims against **Piplani** without violating the automatic stay in the Meir Bankruptcy Case.  *See* MOL, 9-10.  The Defendant offers no legal support for his position, and instead cites to cases for the unremarkable proposition that chapter 5 avoidance actions are property of the estate.  He also relies on *In re Zwirn*, wherein the bankruptcy court held that fraudulent transfer avoidance claims asserted by a judgment creditor in state court against a debtor's prepetition transferees were included in "property of the estate[.]"  *See* 362 B.R. 536, 536 (Bankr. S.D. Fla. 2007).  The Defendant's cited case law is completely inapposite to the matter at hand.

25.     The argument also conflates the Trustee's subsequent transfer claim under section 550(a)(2) with a state law fraudulent conveyance claim which the Florida bankruptcy trustee may or may not be able to bring against the Defendant.[6]  Unlike the judgment creditor in *In re Zwirn*, the Trustee is not pursuing claims against the Defendant under the legal theory that the Defendant

---

[5] The Defendant's argument appears to be premised upon an assumption that Nir Meir's transfers to Piplani were fraudulent and therefore subject to avoidance by the Florida bankruptcy trustee.  However, the Defendant does not explain how the Sale Proceeds fraudulently taken from the Debtor by Nir Meir became property of Nir Meir's bankruptcy estate.  *See, e.g., In re Bake-Line Grp., LLC*, 359 B.R. 566, 570 (Bankr. D. Del. 2007).

[6] The Subsequent Transfers from Nir Meir to the Defendant were made more than two (2) years prior to Nir Meir's bankruptcy filing.  Therefore, the Subsequent Transfers could only be recovered through section 544 of the Bankruptcy Code and applicable state law.

is the initial transferee of fraudulent conveyances from Nir Meir under applicable state law.[7] Rather, the Trustee seeks to recover transfers **of an interest of the Debtor** in property from the Defendant as subsequent transferee.  These are different causes of action with very different elements. The Trustee is seeking to recover property of the EAM Estate – *i.e.*, the Sale Proceeds. As such, the cause of action against the Defendant to recover such property belongs exclusively to the EAM Estate.

26.    The Defendant argues, in essence, that section 550(a)(2) of the Bankruptcy Code is nullified by the automatic stay whenever an initial transferee of a fraudulent transfer files for bankruptcy.  This is nonsensical. As explained *infra*, section 550(a)(2) of the Bankruptcy Code grants the Trustee the statutory right to seek recovery of the Subsequent Transfers from the Defendant without first avoiding the Insider Transfers made to Nir Meir.  Because the Trustee is permitted to seek recovery directly from the Defendant, Nir Meir's bankruptcy estate is in no way implicated by the Trustee's Complaint against the Defendant.

27.    The Defendant also insists that the bankruptcy trustee presiding over Nir Meir's bankruptcy case pending in Florida – and only the Florida bankruptcy trustee—should be permitted to seek avoidance and recovery of the transfers made to the Defendant because the Trustee filed the EAM Proof of Claim against Nir Meir's bankruptcy estate.  *See* MOL, 10-11.  Yet again, the Defendant's MOL is bereft of any legal authority to support his contention.  Indeed, there is simply no basis in law for the Defendant to suggest that by filing the EAM Proof of Claim against Nir Meir on behalf of the Estate, the Trustee cut off this Court's jurisdiction over the Trustee's subsequent transferee claims against the Defendant.

---

[7] The Defendant erroneously contends that the Complaint describes him as "the initial transferee of $250,000 from Meir, **and** the Subsequent Transferee of EAM." *See* MOL, 9 (emphasis added).

28.     Accordingly, the Trustee respectfully asks this Court to reject the Defendant's invitation to hold that a bankruptcy filing by an initial transferee has the effect of stripping a Chapter 7 trustee of his statutory right to recover transfers of interests of the debtor in property from subsequent transferees.  The Defendant's attempt to use Nir Meir's bankruptcy case to avoid liability to the Debtor's Estate should be rejected outright, and the Motion should be dismissed.

**III.     The Motion should be denied because Section 550(a) of the Bankruptcy Code does not require the Trustee to avoid the Insider Transfers before recovering the Subsequent Transfers from the Defendant.**

29.     The Defendant contends that the Trustee's failure to first avoid the Insider Transfers to Nir Meir prevents him from seeking to recover the Subsequent Transfers from the Defendant. *See* MOL., 11.  According to the Defendant, avoidance of the Insider Transfers is a "clear and unambiguous *pre-condition* for seeking relief under § 550(a)(1)" that has not been met and thus Count I fails as a matter of law.  *Id.*, 2.  The Defendant is wrong.

30.     The overwhelming majority of courts that have considered the issue of whether the trustee must first avoid a transfer against an initial transferee prior to recovering that transfer from subsequent transferees – including this Court – have held that the avoidance of the initial transfer is *not* a prerequisite to the commencement of a recovery suit against subsequent transferees.  *See Miller v. Monarch Apparel Group, Inc. (In re J&M Sales Inc.)*, 644 B.R. 440, 445 (Bankr. D. Del. 2022) ("While the Trustee, of course, must still prove that the Transfers can be avoided under Section 547, to the extent he is able to do so they are recoverable from [defendant, who was not the initial transferee].");  *see also IBT Int'l Inc. v. Northern (In re International Admin. Servs., Inc.)*, 408 F.3d 689, 706 (11th Cir. 2005) ("[O]nce the plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line.");  *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 734 (B.A.P. 9th Cir. 2008) ("We hold that a trustee, subject to the requirement of establishing avoidance, may prosecute an action to

10

recover from a subsequent transferee under § 550 without having earlier avoided the initial

transfer"); *Roumeliotis v. Nash Eng'g Holdings, LLC, et al. (In re Nash Eng'g Co.)*, 2024 WL

3429349, at \*15 (D. Conn. July 15, 2024) ("A plaintiff asserting a claim under section 550(a) need

only prove that a transfer is avoidable and not first obtain a litigated judgment of avoidance.");

*Guffy v. Brown, Jr., et al. (In re Brown Med. Ctr., Inc.)*, 2017 WL 5067603, at \*3 (S.D. Tex. Sept.

11, 2017) (rejecting defendants' request for summary judgment on section 550(a) claims on

grounds that plan agent failed to first avoid the original transfers, "conclud[ing] that the decisions

and reasoning by the Eleventh and Ninth Circuits are more persuasive than the *Slack-Horner*

decision by the split Tenth Circuit panel."); *Securities Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Secs. LLC*, 501 B.R. 26, 31 (S.D.N.Y. 2013) ("Thus, there is no basis in the language of

either section 550(a) or the Bankruptcy Code's avoidance provisions to assume that avoidance

actions must be brought—or fully adjudicated—against an initial transferee for recovery

proceedings to go forward against a subsequent transferee."); *Kendall v. Sorani (In re Richmond*

*Produce Co., Inc.)*, 195 B.R. 455, 463 (N.D. Cal. 1996) ("The provision [section 550(a)] contains

no language that suggests that recovery from immediate transferees is in any way dependent upon

a prior action or recovery against the initial transferee."); *Sec. Inv. Prot. Corp. v. Bernard L.*

*Madoff Inv. Sec. LLC*, 2024 WL 2839330, at \*8 (Bankr. S.D.N.Y. June 4, 2024) (stating that while

the trustee must allege that the initial transfer to the initial transferees is avoidable, "he is not

required to avoid the transfer received by the initial transferee before asserting an action against

subsequent transferees."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 653 B.R. 793,

798 (Bankr. S.D.N.Y. 2023) ("While the Trustee must allege that the initial transfer from BLMIS

to the initial transferee is avoidable, he is not required to avoid the transfer received by the initial

transferee before asserting an action against subsequent transferees."); *Mendelsohn v. Roslyn, LLC*

11

*(In re Leff)*, 631 B.R. 106, 126 (Bankr. E.D.N.Y. 2021) ("[T]he Court does not view § 550 as requiring a trustee to first avoid a transfer as against an initial transferee to recover from a subsequent transferee. The trustee only has the obligation the [sic] prove the initial transfer is avoidable."); *In re Giant Gray, Inc.*, 629 B.R. 814, 832 (Bankr. S.D. Tex. 2020) ("[T]his Court finds that § 550 does not require Trustee to bring an action against Ray Davis, the initial transferee, or his estate, to recover from the Defendants as mediate transferees."); *Sklar v. Susquehanna Bank (In re Glob. Prot. USA, Inc.)*, 546 B.R. 586, 619 (Bankr. D.N.J. 2016); *MC Asset Recovery LLC v. Commerzbank AG, et al. (In re Mirant Corp.)*, 2010 WL 8708772, at *35 (Bankr. N.D. Tex. Apr. 22, 2010) ("[T]his court believes that interpreting section 550 to require avoidance of the initial transfer before allowing recovery from subsequent transferees conflates Chapter 11's avoidance and recovery sections"); *Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 745 (Bankr. S.D.N.Y 2008) (analyzing the question under Rule 19 of the Federal Rules of Civil Procedure regarding joinder of parties and concluding that the initial transferee is neither a necessary nor required party in a suit against a subsequent transferee); *Leonard v. Optimal Payments Ltd. (In re National Audit Def. Network)*, 332 B.R. 896, 915 (Bankr. D. Nev. 2005); *Advanced Telecomm. Network, Inc. v. Allen, et al. (In re Advanced Telecomm. Network, Inc.)*, 321 B.R. 308, 328 (Bankr. M.D. Fla. 2005), *subsequently rev'd on other grounds*, 490 F.3d 1325 (11th Cir. 2007) ("Nothing in the language of Section 550 requires a plaintiff in a fraudulent transfer adversary proceeding to avoid the transfer received by the initial transferee before continuing with avoidance actions down the line of transfers."); *Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331, 335 (Bankr. W.D. Tex. 1998) ("§ 550 does not require that the transfer be avoided in a temporally antecedent and separate procedure, but simply recognizes the

12

limitations placed on recovery by the safe harbors for certain transfers found in provisions such as § 548(c)").

31.     As explained in the preeminent bankruptcy treatise, Collier on Bankruptcy:

> [r]ecovery "to the extent that" a transfer is avoided has sometimes been interpreted to require a successful avoidance action against the initial transferee before recovery may be had from a subsequent transferee. **The better view, adopted by the majority of courts, is that a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee**.

*See* 5 Collier on Bankruptcy ¶550.02 (16th Ed. 2024) (emphasis added).

32.     This Court recently considered the issue of whether section 550 of the Bankruptcy Code requires a transfer be avoided as to the initial transferee before a trustee can seek recovery against a beneficiary of the transfer. *See In re J&M Sales Inc.*, 644 B.R. 440.  In *J&M Sales Inc.*, the defendant likewise argued that section 550 of the Bankruptcy Code requires that the trustee avoid the initial transfer to the initial transferee before the trustee can seek recovery under section 550(a)(1). *Id.* at 445.  In response, the trustee argued that the plain language of section 550 "makes clear that he is not required to name the initial transferee in an action to avoid a preferential transfer from a transfer beneficiary." *Id.*  This Court agreed with the Trustee, explaining that while the trustee must still prove that the transfers can be avoided under section 547, to the extent he is able to do so they are recoverable from the transferee beneficiary. *Id.*

33.     Despite the overwhelming body of case law to the contrary, including the recently published opinion from this Court, the Defendant insists that the language in section 550(a)(2) of the Bankruptcy Code[8] is clear and unambiguous, and that the qualifying language of "to the extent

---

[8] Section 550(a)(2) of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section … 548 … of this title, the [T]rustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from … any immediate or mediate transferee of such initial transferee." *See* 11 U.S.C. § 550(a)(2).

78719225\2

that a transfer is avoided" can only be read to "require[] the trustee to avoid the initial transfer before seeking recovery from a subsequent transferee." *See* MOL., 12-14.  But as explained by the U.S. District Court for the Southern District of New York, "[t]he language of section 550(a) is ambiguous, not only because the question of against whom avoidance must be sought is unclear, but also because the language, 'to the extent ... avoided,' seems to suggest, not a temporal limitation requiring prior avoidance, but rather a limitation on the portion of the transfer that may be recovered[.]" *Bernard L. Madoff*, 501 B.R. at 31.  The avoidance provisions of the Bankruptcy Code do not address against whom an avoidance action should be brought, such that "[a]voidability is an attribute of the transfer and not the party." *Id*. at 31.

34.     Because the language "to the extent that a transfer is avoided" is ambiguous, it must be interpreted in light of the structure of section 550(a) and its place in the overall operation of the Bankruptcy Code.  *Id*.  As courts have recognized, there is nothing in the language of section 550 that "suggests that recovery from immediate transferees is in any way dependent upon a prior action or recovery against the initial transferee." *In re Richmond Produce Co., Inc.,* 195 B.R. at 463.  Furthermore, the qualifying language "to the extent" is also used in section 548(c) of the Bankruptcy Code.  In that context, the language refers to the amount of the transfer that is not protected from avoidance by section 548(c)'s defense.  *See* 11 U.S.C. § 548(c); *see also Bernard L. Madoff*, 501 B.R. at 32.  It follows that section 550(a) would use the same phrasing to convey the same meaning.  *Id*.  Indeed, the majority of courts have recognized that section 550(a)'s "'to the extent' language … 'simply recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of the transfer is recoverable.'" *In re AVI, Inc.*, 389 B.R. at 733; *see also In re Richmond Produce Co., Inc.*, 195 B.R. at 463; *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 706.

35.     Courts have also rejected the Defendant's strict interpretation of section 550(a) on the basis that it produces "a harsh and inflexible result that runs counterintuitive to the nature of avoidance actions." *See In re Int'l Admin. Serv., Inc.*, 408 F.3d at 704.  As the Eleventh Circuit has explained, such a strict interpretation would permit subsequent transferees, like the Defendant, to evade liability in many instances, to the detriment of the Debtor's estate:

> The cornerstone of the bankruptcy courts has always been the doing of equity, and in situations such as this, where money is spread throughout the globe, fraudulent transferors should not be allowed to use § 550 as both a shield and a sword. Not only would subsequent transferees avoid incurring liability, but they would also defeat recovery and further diminish the assets of the estate. An opposite result would foster the creation of similar enterprises, for creditors would design increasingly complex transactions, with the knowledge that more transfers decrease the likelihood of a successful avoidance action. Moreover, the increased cost in litigation and the delays associated with prolonged investigations would only contribute to a debtor's shrinking estate.

*See id.*, at 707 (citations omitted).  Under the Defendant's strict interpretation of section 550(a), "[i]f the initial transaction must be avoided in the first instance, then any streetwise transferee would simply re-transfer the money or asset in order to escape liability. The chain of transfers would be endless." *See id.*, at 704.

36.     The legislative history of section 550(a) further erodes the Defendant's position. The legislative history reveals that the qualifying language "to the extent that a transfer is avoided" was designed to incorporate the protection of transferees found in section 548(c) of the Bankruptcy Code.  Congress contemplated the qualifying language to mean that "liability is not imposed on a transferee to the extent that a transferee is protected under a provision ... which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given." *See* 124 Cong. Rec. H32400 (Sept. 28, 1978), S34000 (Oct. 5, 1978).

15

78719225\2

37. Despite the foregoing, the Defendant points to the opinion in *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006) and urges this Court to adopt that bankruptcy court's reasoning – all of which was flatly **overturned** on appeal by the U.S. District Court for the Southern District of New York. *See Enron Creditors Recovery Corp. v. Int'l Fin. Corp. (In re Enron Creditors Recovery Corp.)*, 388 B.R. 489 (S.D.N.Y. 2008). In overturning the bankruptcy court, the *Enron* district court:

> [i]n essence … found that Section 550 must be construed flexibly to avoid harsh and inequitable results. Specifically, it noted that 'two [sic] ready an application of the requirement of the condition precedent can amount to forfeiture. And in this application it would bar the trustee from seeking recovery of assets that arguably should be recovered for the bankrupt ... and the creditors thereof.'

*See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 521 (Bankr. S.D.N.Y. 2012) (*citing In re Enron Creditors Recovery Corp.*, Hearing Transcript (Enron Transcript), No. 07–6597, Dkt. No. 32, Apr. 16, 2008, at p. 38, lines 11–15). The Trustee submits that this Court should similarly construe section 550(a) so as to avoid a harsh and inequitable result in this case.

38. Further, contrary to the Defendant's contention, rejecting the Defendant's interpretation of section 550(a) would not render the statute of limitations for recovery found in section 550(f) unnecessary. *See* MOL, 21. The fact that avoidance against an initial transferee is not required under section 550(a) does not mean that bringing avoidance and recovery actions sequentially is not permissible. As the *AVI, Inc.* court noted,

> if the trustee seeks to avoid a transfer and recover the property or its value in the same adversary proceeding, assuming the avoidance is timely and established, then the recovery action will necessarily be within the one year pursuant to § 550(f). Alternatively, if the trustee prosecutes a separate adversary proceeding for avoidance and then a subsequent adversary proceeding for recovery, the avoidance action is subject to the statute of limitations [for avoidance] and § 550(f) is applicable to the recovery adversary proceeding.

389 B.R. at 734.

39.     Finally, allowing the Trustee to prosecute this action to recover from the Defendant without first having to avoid the Insider Transfers to Nir Meir is not "unfair" and does not "saddle" the Defendant "with the outcome of an avoidance action in which [he] did not get to participate[.]" *See* MOL, 21.  It is well-settled that in an action against a subsequent transferee, the trustee has the burden of proving that the transfer to the initial transferee is avoidable and the subsequent transferee is not collaterally estopped from litigating that question merely because he is a subsequent transferee. *See* Collier on Bankruptcy, ¶ 550.02[1].  As such, there is simply no basis for the Defendant to suggest that the Trustee's interpretation of section 550(a) unfairly tilts litigation in the Trustee's favor.

40.     For these reasons, the Trustee respectfully submits that the Court should reiterate its prior holding in *J&M Sales* that section 550(a) of the Bankruptcy Code does not require the avoidance of the initial transfer as a pre-condition to the commencement of a recovery suit against subsequent transferees under section 550(a)(2).  Because the avoidance of the initial transfer is not required, the Defendant's Motion should be denied.

**IV.     The Motion should be denied because Count I satisfies the *Twombly/Iqbal* pleading standard.**

41.     The Defendant argues that Count I of the Complaint fails to meet the *Twombly/Iqbal* pleading standard and therefore should be dismissed because (i) the "[Insider] Transfers have not been avoided" and (ii) the Complaint does not "trace the [Subsequent] Transfers back to [the Debtor]/the Sale Proceeds." MOL, 22.  For the reasons explained *supra*, the Defendant's first point is unavailing because the Trustee is ***not*** required to avoid the Insider Transfers prior to bringing a subsequent transferee claim against the Defendant.

42.     With respect to the Defendant's second basis for challenging Count I, the Defendant suggests—without legal authority—that the Complaint must "state the exact amounts in [the JP

17

Morgan Chase account ending in -2895] at the time each transfer was made between 4/6/21 and 5/5/21 or trace the source of all funds in the JP Morgan Chase account to EAM or the Title Company." MOL, 22. But once again, the Defendant's argument is meritless.

43.      "To plead a subsequent transfer claim, the trustee must plead that the initial transfer is avoidable, and that the defendant is a subsequent transferee of that initial transfer." *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014). To satisfy the Trustee's burden to recover the Subsequent Transfers, the Complaint "must allege facts that support the inference that the funds at issue originated with the debtor, and contain the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id*. at 149-50 (citations omitted). The Trustee's burden at the pleading stage "is not so onerous as to require dollar-for-dollar accounting of the exact funds at issue." *Id*. at 150.

44.      In the Complaint, the Trustee alleges that on April 5, 2021, Nir Meir directed the Title Company to disburse $1,628,158.58 of the Sale Proceeds to Nir Meir's Chase Bank account ending in -2895. Comp., ¶¶23, 25. The Insiders' bank accounts from which the Subsequent Transfers were made had small balances prior to receiving the Initial Transfers. *Id.*, ¶38. Nir Meir subsequently transferred a total of $250,000.00 of the Sale Proceeds from his Chase Bank account ending in -2895 to the Defendant on the dates and in the amounts identified on Exhibit A to the Complaint. *See Id.*, ¶¶36, 37; Ex. A. More specifically, as set forth on Exhibit A to the Complaint, Nir Meir made three (3) transfers from his Chase Bank account ending in -2895 to the Defendant between April 6, 2021 and May 5, 2021, totaling $250,000.00. *Id.*, Ex. A. The Trustee submits that the Complaint sets forth sufficient detail on the Subsequent Transfers to put the Defendant on notice as to precisely which transfers the Trustee is seeking to recover from him. The Trustee

18

further submits that these allegations, considered together, are sufficient at the pleading stage to support the inference that the funds at issue originated with the Debtor, and to establish the Defendant as a subsequent transferee of the Sale Proceeds.

45.    To the extent the Defendant argues that the Complaint should be dismissed because the Trustee failed to allege facts describing the Defendant's business relationship, if any, with either the Debtor or Nir Meir, this argument also fails. *See* MOL, 21.  Once again, the Defendant cites to no legal authority to support his contention that a trustee must plead in detail the business relationships between transferees.  As explained above, the Trustee is only required to allege facts sufficient to support the inference that the funds at issue originated with the Debtor, and the necessary "vital statistics" to establish the Defendant as a subsequent transferee of the Sale Proceeds. *See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. at 149-50.  He has done so here.

46.    Finally, the Defendant appears to also make a perfunctory argument for dismissal of the Complaint on the grounds that the "Complaint is bereft of any allegations to support § 548 relief." *See* MOL, 28.  In support, the Defendant seems to argue that the Complaint "alternatively states Defendant received the Subsequent Transfers from either the Insiders or just Meir and incorrectly alleges Defendant resides in New York[.]" MOL, 28.  Setting aside the Defendant's apparent confusion over the Trustee's allegations that he received the Subsequent Transfers from Nir Meir, it is unclear what these allegations have to do with pleading the avoidability of the Insider Transfer to Nir Meir under section 548.

47.    The Defendant also asserts that the Trustee failed to plausibly allege insolvency. MOL, 28.  Setting aside that "insolvency" is irrelevant to a claim under section 548(a)(1)(A),[9] the

---

[9] *See In re Prosser*, 534 F. App'x 126, 132 (3d Cir. 2013); *See also In re Diamond Fin. Co., Inc.*, 658 B.R. 748, 766 (Bankr. E.D.N.Y. 2024) ("The Debtor's fraudulent intent is a requirement under the intentional fraudulent conveyance statutes and a finding of the Debtor's insolvency is a component of the constructive fraudulent conveyance actions.").

78719225\2

Complaint alleges that on April 5, 2021, Nir Meir caused the Debtor to sell 40 Meadow Lane, and directed the Title Company to disburse $1,628,158.58 of the Sale Proceeds to Nir Meir's Chase Bank account ending in -2895. Comp., ¶¶23, 25. 40 Meadow Lane was the Debtor's principal asset and the Debtor received none of the consideration for the sale of the property. Comp., ¶¶22, 23. The Complaint further alleges that as a result of the sale of 40 Meadow Lane and the disbursements of all the Sale Proceeds, the Debtor was left insolvent. Comp., ¶¶33, 34.

48.     At bottom, the Trustee's Complaint plausibly alleges that the Insider Transfer to Nir Meir is avoidable, and that the Defendant is a subsequent transferee of that Insider Transfer. Accordingly, Count I of the Complaint satisfies the *Twombly/Iqbal* pleading standard, and the Motion should be denied.

**V.      The Defendant's request to dismiss Count II of the Complaint must be denied.**

49.     Because Count I of the Complaint plausibly states a claim for recovery under section 550(a) of the Bankruptcy Code, the Defendant's request to dismiss Count II of the Complaint should be denied. *See* MOL, 28.

50.     Finally, the Trustee acknowledges the American Rule on attorney's fees, but reserves all rights to recover the costs and expenses of this Adversary Proceeding to the extent permitted by applicable law. *See* MOL, 28.

## CONCLUSION

51.     In conclusion, the Trustee respectfully submits that the factual allegations in the Complaint are sufficient to allow this Court to draw the reasonable inference that the Trustee is entitled to recover from the Defendant the Subsequent Transfers or the value thereof, and sufficient to provide appropriate notice to the Defendant. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. Accordingly, the Trustee respectfully requests that this Court deny the Defendant's Motion.

Date:  July 2, 2025
Wilmington, DE

                                    COZEN O'CONNOR


                         By:    /s/ *John T. Carroll, III*
                                John T. Carroll, III (DE No. 4060)
                                Simon E. Fraser (DE No. 5335)
                                1201 North Market Street
                                Suite 1001
                                Wilmington, DE  19801
                                (302) 295-2000 Telephone
                                (302) 295-2013 Fax No.
                                jcarroll@cozen.com
                                sfraser@cozen.com

                                and

                                Christina M. Sanfelippo
                                (*Pro Hac Vice forthcoming*)
                                123 North Wacker Drive
                                Suite 1800
                                Chicago, IL 60606
                                (312) 382-3100 Telephone
                                csanfelippo@cozen.com

                                *Counsel for George L. Miller,*
                                *Chapter 7 Trustee*

78719225\2